PEOPLE ACTING THROUGH COMMU-
NITY EFFORT et al., Plaintiffs,
Appellants,

v.

Joseph A. DOORLEY, Jr., et al.,
Defendants, Appellees.

No. 72–1159.

United States Court of Appeals,
First Circuit.

Argued Sept. 7, 1972.

Decided Nov. 15, 1972.

Stephen J. Fortunato, Jr., Warwick, R. I., with whom Breslin, Sweeney, Reilly & McDonald, Warwick, R. I., Kenneth F. MacIver, Jr., and David M. Levy, Providence, R. I., were on brief, for appellants.

Ronald H. Glantz, Deputy City Sol., with whom Robert J. McOsker, City Sol., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and HAMLEY,[*] Senior Circuit Judge.

McENTEE, Circuit Judge.

People Acting Through Community Effort[1] (hereinafter PACE) initiated this action against certain officials[2] of the City of Providence seeking declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202 (1970), from the enforcement of Section 2 of Providence Ordinance No. 461, chapter 1971–

---

[*] Of the Ninth Circuit, sitting by designation.

[1] People Acting Through Community Effort has been described as an incorporated organization composed of individuals from the Providence area who organize neighborhood groups to devise solutions to local problems including those of urban blight and substandard housing.

[2] The defendants-appellees include Joseph A. Doorley, Jr., Mayor of Providence, Harry Goldstein, Providence Public Safety Commissioner, Colonel Walter McQueeney, Chief of the Providence Police, Robert J. McOsker, Providence City Solicitor, and Providence Police Sergeant Inglesby.

55, as amended. This ordinance, with certain exceptions, prohibits residential picketing.[3] After issuing a preliminary order curtailing the enforcement of the ordinance, the trial court, 338 F.Supp. 574, upheld the constitutionality of the ordinance and denied the requested relief. PACE appeals. For the reasons set forth below, we reverse.

The underlying facts are not in dispute. The challenged ordinance was adopted by the City on October 21, 1971, and became effective immediately. It prohibited all residential picketing with the exception of labor picketing where a residence is the site of, or is in the same building as the site of, a labor dispute. On November 16, 1971, nine PACE members (eight demonstrators and one photographer) engaged in a peaceful demonstration at the residence of one Abraham Konoff, a Providence landlord. The pickets marched in single file, six to eight feet apart, on the public sidewalk in front of his home. Some PACE members carried signs reading, "Mr. Konoff, fix your property on Dudley Street." Others distributed leaflets to neighboring houses. Approximately forty-five minutes after the demonstration began, Providence Police Sergeant Inglesby arrived on the scene. He informed the group that their conduct violated the anti-residential picketing ordinance and ordered them to disperse. He did not interfere with the leaflet distribution. Fearing arrest and prosecution, the PACE members abandoned the demonstration.

On these facts PACE alleged that the ordinance unconstitutionally abridged the rights of freedom of speech, freedom of assembly, equal protection, and due process guaranteed to its members by the first and fourteenth amendments. Specifically, PACE argued that the ordinance was impermissibly overbroad, unconstitutionally vague, and, in light of the exception for labor picketing, violative of equal protection.

The trial court held that the challenged ordinance was a reasonable regulation justified by the City's interest in protecting the privacy of its citizens. It thus found no violation of the first amendment. The court also held that the ordinance was not unconstitutionally vague since it employed words of common understanding. Further, it found no equal protection violation because it found the exception for labor picketing essential to insure to employees the right to picket at the situs of a labor dispute.

On appeal PACE asserts the arguments raised below. Since we find that this ordinance draws an impermissible distinction between labor picketing and other peaceful picketing, we reverse on

---

3. "SECTION 2. *Residential Picketing.*
    (1) Declaration. It is hereby declared that the protection and preservation of the home is the keystone of democratic government; that the public health and welfare and the good order of the community require that members of the community enjoy in their homes and dwellings a feeling of well-being, tranquility, and privacy, and when absent from their homes and dwellings, carry with them the sense of security inherent in the assurance that they may return to the enjoyment of their homes and dwellings; that the practice of picketing before or about residences and dwellings causes emotional disturbance and distress to the occupants; obstructs and interferes with the free use of public sidewalks and public ways of travel; that such practice has as its object the harass-

ing of such occupants; and without resort to such practice full opportunity exists, and under the terms and provisions of this ordinance will continue to exist for the exercise of freedom of speech and other constitutional rights; and that the provisions hereinafter enacted are necessary for the public interest to avoid the detrimental results herein set forth.
    (2) It shall be unlawful for any person to engage in picketing before or about the residence or dwelling of any individual. Nothing herein shall be deemed to prohibit (1) picketing in any lawful manner during a labor dispute of the place of employment, involved in such labor dispute, or (2) the holding of a meeting or assembly on any premises commonly used for the discussion of subjects of general public interest."

equal protection grounds, and do not reach appellants' other contentions.

■ Ordinance No. 461 regulates expressive conduct which falls within the ambit of protected first amendment activity.[4] *See, e. g.*, Gregory v. Chicago, 394 U.S. 111, 113, 89 S.Ct. 946, 22 L.Ed. 2d 134 (1969); Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 313–315, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). We thus employ an active standard of review in scrutinizing the classifications which this statute creates. Police Department of Chicago v. Mosley, 408 U.S. 92, 101, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Williams v. Rhodes, 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The crucial question is whether the classification is "necessary to promote a compelling state interest." Dunn v. Blumstein, 405 U.S. 330, 337, 92 S.Ct. 995, 1003 (1972).

■ We note initially that the ordinance in question distinguishes between permissible and impermissible conduct on the basis of the content of the demonstrator's message.[5] Information about labor disputes may be disseminated, but other information may not. In Police Department of Chicago v. Mosley, *supra,*

and Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court considered two municipal ordinances which prohibited picketing within 150 feet of any school building during specified periods. Both ordinances excepted peaceful labor picketing when the school was the site of a labor dispute. In striking down these provisions on equal protection grounds, Mr. Justice Marshall analyzed the Chicago ordinance in the following terms:

"The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful picketing on the subject of a school's labor-management dispute is permitted but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign. But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. (Citations omitted.) . . . .

" . . . Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." *Mosley, supra,* at 95–96, 92 S.Ct. at 2290.[6]

4. We of course recognize that the right to picket is not unqualified. Reasonable neutral regulation as to "time, place and manner" is permissible. Cox v. New Hampshire, 312 U.S. 569, 575–576, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); Cox v. Louisiana, 379 U.S. 536, 554–555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Adderly v. Florida, 385 U.S. 39, 46–48, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

5. As in *Mosley,* "the equal protection claim in this case is closely intertwined with First Amendment interests." *Id.* at 95, 92 S.Ct. at 2289.

6. The Court in *Mosley* also adopted the following statement from Mr. Justice Black's concurring opinion in Cox v. Louisiana, 379 U.S. 536, 581, 85 S.Ct. 453, 13 L.Ed.2d 471:

"[B]y specifically permitting picketing for the publication of labor union views [but prohibiting other sorts of picketing], Louisiana is attempting to pick and choose among the views it is willing to have discussed on its streets. It thus is trying to prescribe by law what matters of public interest people whom it allows to assemble on its streets may and may not discuss. This seems to me to be censorship in a most odious form, unconstitutional under the First and Fourteenth Amendments. And to deny this appellant and his group use of the streets because of their views against racial discrimination, while allowing other groups to use the streets to voice opinions on other subjects, also amounts, I think, to an invidious discrimination forbidden by the Equal Protecton Clause of the Fourteenth Amendment." *Mosley, supra,* at 97–98, 92 S.Ct. at 2291.

We find this reasoning to be fully applicable to the provision in question in the instant case.

We also find that the ordinance in question draws an unwarranted distinction between labor picketing and other residential demonstrations. While we recognize the interest of the City of Providence in both promoting the privacy of its citizens and permitting laborers to demonstrate at the site of labor disputes, this interest cannot justify the City's preferred treatment of labor picketing. We again find the reasoning of *Mosley* to be persuasive.

"Chicago itself has determined that peaceful labor picketing during school hours is not an undue interference with school. Therefore, under the Equal Protection Clause, Chicago may not maintain that other picketing disrupts the school unless that picketing is clearly more disruptive than the picketing Chicago already permits. (Citations omitted.) If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful. 'Peaceful' nonlabor picketing, however the term 'peaceful' is defined, is obviously no more disruptive than 'peaceful' labor picketing. But Chicago's ordinance permits the latter and prohibits the former. Such unequal treatment is exactly what was condemned in Niemotko v. Maryland, 340 U.S. [268], at 272–273, 71 S.Ct. [325], at 327–328 [95 L.Ed. 267] (1951).

. . . . . .

The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives. (Citations omitted.) Chicago may not vindicate its interest in preventing disruption by the wholesale exclusion of picketing on all but one preferred subject. Given what Chicago tolerates from labor picketing, the excesses of some nonlabor picketing may not be controlled by a broad ordinance prohibiting both peaceful and violent picketing." *Id.* at 100–102, 92 S.Ct. at 2292–2293.

In the instant case the ordinance authorizes lawful (and presumably peaceful) labor picketing at residential sites. Having chosen to open the residential forum to this extent, Providence may not, in a manner consistent with the command of the Equal Protection Clause, prohibit all other forms of residential picketing. Therefore, under the Equal Protection Clause, the ordinance may not stand.

Reversed.