Roy BROWN et al., Plaintiffs-Appellants,

v.

William J. SCOTT et al.,
Defendants-Appellees.

No. 78–2432.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1979.

Decided Aug. 2, 1979.

Edward B. Arnolds, Chicago, Ill., for plaintiffs-appellants.

Ellen G. Robinson, Asst. State's Atty., Philip L. Bronstein, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before TONE and BAUER, Circuit Judges, and SOLOMON, Senior District Judge.*

TONE, Circuit Judge.

The Illinois Residential Picketing Statute, Ill.Rev.Stat. ch. 38, §§ 21.1–1 through 21.-1–3 (1977), makes the picketing of residences or dwellings a misdemeanor, with certain enumerated exceptions. The district court held the statute constitutional, rejecting plaintiffs' equal protection, overbreadth, and vagueness arguments. We hold that the statute violates the equal protection clause of the Fourteenth Amendment as interpreted in *Police Department*

* The Honorable Gus J. Solomon, Senior District Judge of the United States District Court for the District of Oregon, is sitting by designation.

of *Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), and we therefore reverse the judgment.

Plaintiffs are the Committee Against Racism, an unincorporated association, and fifteen individual members of that association. The defendants, all sued in their official capacities, are various state, county, and city officials responsible for enforcing the statute. On September 7, 1977, fourteen of the individual plaintiffs engaged in peaceful picketing on the public sidewalk in front of the residence of Michael A. Bilandic, then Mayor of Chicago, to protest his policies concerning the busing of school children to achieve racial integration. They were subsequently charged with violating the residential picketing statute, pleaded guilty to the charge, and were sentenced to periods of supervision.

Plaintiffs later filed this action seeking a declaratory judgment that the statute is unconstitutional on its face and as applied, and an injunction to prohibit defendants from enforcing the statute. Ruling on cross-motions for summary judgment, the district court held the statute valid and entered a summary judgment in favor of the defendants, from which plaintiffs appeal.

### I.

■ Defendants raise the issue of mootness in view of Mayor Bilandic's departure from office while the appeal has been pending. Although it is true that the affidavits filed by several of the plaintiffs express a specific desire to picket "Mayor Michael A. Bilandic's residence," they allege in the complaint that they "wish to engage again in residential picketing to demonstrate in Chicago neighborhoods their concern for racial equality, civil rights and racial integration . . . ." The mayoral change does not alter this intention or defendants' expressed intention to enforce the statute.

Consequently, it cannot be said with assurance that there is no reasonable expectation that the alleged violation will recur. Nor have the interim events completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, —— U.S. ——, ——, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). There remains "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974), quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see Allee v. Medrano*, 416 U.S. 802, 810–811, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). The case is therefore not moot.

### II.

The substantive provisions of the challenged statute are as follows:

It is unlawful to picket before or about the residence or dwelling of any person, except when the residence or dwelling is used as a place of business. However, this Article does not apply to a person peacefully picketing his own residence or dwelling and does not prohibit the peaceful picketing of a place of employment involved in a labor dispute [1] or the place of holding a meeting or assembly on premises commonly used to discuss subjects of general public interest.

Ill.Rev.Stat. ch. 38, § 21.1–2.

In *Police Department of Chicago v. Mosley, supra*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212, the Court held invalid a similar picketing prohibition containing a similar labor picketing exception. The Chicago ordinance before the Court in that case prohibited picketing at any school other than a

---

1. Although the statute does not expressly limit the subject matter of the picketing allowed at such a residence, the parties do not dispute that the exception applies only to labor picketing related to the dispute. The Chicago ordinance, quoted in this opinion at note 2, *infra*, challenged in *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), was similarly vague. *See* 408 U.S. at 95 n.2, 92 S.Ct. 2286.

school involved in a labor dispute.[2] The Court held that the ordinance violated the equal protection clause by allowing labor picketing while prohibiting other kinds of picketing when the former is not "clearly more disruptive than" the latter. 408 U.S. at 101, 92 S.Ct. 2286. The Court concluded,

The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives. . . . Far from being tailored to a substantial governmental interest, the discrimination among pickets is based on the content of their expression. Therefore, under the Equal Protection Clause, it may not stand.

*Id.* at 102, 92 S.Ct. at 2293–2294.

### III.

The district court held, and defendants argue, that plaintiffs lacked standing to challenge the statute on the *Mosley* ground. The court read the labor exception as creating two sets of classifications: the classification of "place of employment" as opposed to "residence," and that of "place of employment involved in a labor dispute" as opposed to "place of employment not involved in a labor dispute." Plaintiffs, the court held, had standing to challenge only the first classification, which regulates only the location of picketing and does not violate the equal protection clause because it is supported by the compelling state interest of providing a meaningful forum for labor picketers. Recognizing that the second

classification might deny some picketers equal protection under the *Mosley* holding, the court held that it did not so affect plaintiffs because they did not seek to picket a "place of employment." The district court reasoned that the plaintiff in *Mosley* had standing to challenge the ordinance because he sought to picket at a school, a location at which the ordinance permitted labor picketing, but plaintiffs here seek to picket "residences" rather than "places of employment," at which the statute permits labor picketing.

We think this interpretation of the statute is incorrect. Section 21.1–2 is concerned with "residences and dwellings," not with other places, and the brief article of the Illinois Criminal Law and Procedure Code of which that section is a part is concerned solely with "residential picketing." Although the second clause of the second sentence of § 21.1–2, the "place of employment" clause, does not use the words "residences and dwellings," it refers to such places and only such places. The only prohibition contained in the section or the article is against picketing "before or about the residence or dwelling of any person." Unless the "place of employment" clause refers to a place of employment that is also a residence or dwelling, the clause is utterly unnecessary, because nothing in the article purports to prohibit picketing at any place that is not a residence or dwelling.[3] *Accord, People Acting Through Community Effort v. Doorley,* 468 F.2d 1143, 1146 (1st Cir. 1972).[4] Accordingly, at a residence

---

**2.** Chicago Municipal Code ch. 193–1(i) (1968) read in relevant part:

A person commits disorderly conduct when he knowingly:

. . . . .

(i) Pickets or demonstrates on a public way within 150 feet of any primary or secondary school building while the school is in session and one-half hour before the school is in session and one-half hour after the school session has been concluded, provided, that this subsection does not prohibit the peaceful picketing of any school involved in a labor dispute . . . . .

**3.** Also for a similar reason, the "place of employment" clause refers to a place of employment that is not "used as a place of business"; for if it is used as a place of business it is

already excepted from the coverage of the section by the "except" clause of the first sentence. Accordingly, the statute allows labor picketing or any other kind of picketing at residences or dwellings that are used as places of business.

**4.** The court held that "lawful . . . labor picketing at residential sites" was permitted by an ordinance that read in relevant part as follows:

[I]t shall be unlawful for any person to engage in picketing before or about the residence or dwelling of any individual. Nothing herein shall be deemed to prohibit (1) picketing in any lawful manner during a labor dispute of the place of employment, involved in such labor dispute . . . . .

468 F.2d at 1144 n.3 & 1146.

that is also a place of employment, the statute allows labor picketing but not picketing for any other purpose.

■ Defendants also argue that plaintiffs lack standing to assert the *Mosley* rule because there was no labor dispute at the Bilandic house, so the labor exception is inapplicable. This argument is defeated by the *Mosley* case itself. The plaintiff in *Mosley* was accorded standing even though the school he sought to picket was not "involved in a labor dispute" and thus could not have been the site of labor picketing. We are not free to assume that the Supreme Court overlooked the standing issue. The implicit holding that the plaintiff in *Mosley* had standing requires us to hold that plaintiffs here have standing even though the residences they seek to picket may not be "places of employment involved in a labor dispute" at the time they picket.

### IV.

The *Mosley* case is also controlling on the merits. Applying its reasoning we are required to conclude that because Illinois allows peaceful labor picketing at a residence it has determined that such picketing "is not an undue interference" with the peace and privacy of the home. 408 U.S. at 100, 92 S.Ct. 2286. The equal protection clause does not permit Illinois to prohibit other kinds of picketing "unless that picketing is clearly more disruptive than the picketing [Illinois] already permits. . . . 'Peaceful' nonlabor picketing, however the term 'peaceful' is defined, is obviously no more disruptive than 'peaceful' labor picketing. But [Illinois' statute] permits the latter and prohibits the former." 408 U.S. at 100, 92 S.Ct. at 2292; *see also People Acting Through Community Effort v. Doorley, supra,* 468 F.2d at 1146.

Defendants contend that we should not follow *Mosley* for three reasons. None is persuasive.

First, defendants argue that *Mosley* is not a controlling precedent after *Young v.*

*American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). A sufficient answer is that the portion of Mr. Justice Stevens' opinion relied on in that case, Part III, was joined in by only four of the nine participating justices and so could not in any event be taken to have abrogated *Mosley.* Moreover, Mr. Justice Stevens does not suggest in Part III of the opinion that *Mosley* was incorrectly decided. He states only "that broad statements of principle," such as the language in *Mosley* about regulating speech on the basis of its content, "no matter how correct in the context in which they are made," are not necessarily to be carried to their logical extremes. 427 U.S. at 65–66, 96 S.Ct. at 2450. We detect in Part III no disapproval of the decision in *Mosley,* based as it was on equal protection grounds although carrying First Amendment overtones. Moreover, two years after *Young* the Court cited *Mosley* with approval. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 785, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).

Defendants attempt to distinguish the statute challenged here from the *Mosley* ordinance because its picketing prohibition applies at residences rather than at schools. The rights affected by the two laws are the same, however, and the state interests served by both laws are substantial. We can see no principled basis for this distinction, and counsel could not supply such a basis when asked to do so at oral argument. We agree with the First Circuit's application of the *Mosley* rationale to a residential picketing statute in *People Acting Through Community Effort v. Doorley, supra,* 468 F.2d at 1145–1146.

Defendants also attempt to distinguish the challenged statute from the *Mosley* ordinance by arguing that the use of a residence as a "place of employment" changes its character so that the different treatment afforded labor and nonlabor picketing is justified by the differences in the locations involved. We find no principled basis in this distinction for holding *Mosley* inapplicable.

■ Under *Mosley* the statute, as applied to plaintiffs and on its face,[5] violates the equal protection clause of the Fourteenth Amendment.[6] Our holding implies neither disparagement of the important state interest in protecting the peace and privacy of the home[7] nor an opinion that the state may not prohibit or regulate residential picketing in a manner consistent with the equal protection clause as interpreted in *Mosley*.

### V.

■ Plaintiffs also complain of the district court's denial of class certification. In a number of cases this court has held that if the requirements of Rule 23 are satisfied class certification should not be refused because of lack of need. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978); *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976); *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1975). In sustaining a class certification order in *Alliance To End Repression v. Rochford*, 565 F.2d 975, 980 (7th Cir. 1977), the court assumed the existence of a need criterion for class certification, and suggested that there is little need for a class action when the issue is the constitutionality of a statute or regulation on its face. Without questioning the soundness of that suggestion, we nevertheless feel bound by the *Hampton, Vickers,* and *Fujishima* decisions to require class certification in this case.

The case is remanded to the district court for the purpose of certifying an appropriate class and the entry of a final judgment consistent with this opinion.

Reversed and Remanded.

---

5. Although the Supreme Court did not specifically state that the ordinance in *Mosley* was facially unconstitutional, in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), a companion case to *Mosley*, the Court expressly held an identical ordinance invalid on its face for the reasons given in *Mosley*. 408 U.S. at 106–107 & nn.1–2, 92 S.Ct. 2286 & nn.1–2.

6. The labor dispute exception is not severable from the remainder of the statute because its excision would subject a group of persons to criminal sanctions that the Illinois General Assembly did not intend to subject to those sanctions, *viz.*, persons engaged in peaceful labor picketing at a "place of employment involved in a labor dispute." *Connolly v. Union Sewer Pipe Co.*, 184 U.S. 540, 565, 22 S.Ct. 431, 46 L.Ed.2d 679 (1902); *accord, State v. Schuller*, 280 Md. 305, 372 A.2d 1076, 1083–1084 (1977). Hence the statute in its entirety must fall and we need not consider the constitutionality of a prohibition of residential picketing or of the statute's other exceptions to the prohibition.

7. The "Legislative Finding and Declaration" that is a part of the Illinois Residential Picketing Statute describes the interest the statute is intended to serve in the following words:

The Legislature finds and declares that men in a free society have the right to quiet enjoyment of their homes; that the stability of community and family life cannot be maintained unless the right to privacy and a sense of security and peace in the home are respected and encouraged; that residential picketing, however just the cause inspiring it, disrupts home, family and communal life; that residential picketing is inappropriate in our society, where the jealously guarded rights of free speech and assembly have always been associated with respect for the rights of others. For these reasons the Legislature finds and declares this Article to be necessary.