652 N.E.2d 80 (1995)
Ethel M. McCart, Aubrey C. Hamilton and Robert F. Hoover, On Behalf of Themselves and All Others Similarly Situated, Appellants-Plaintiffs,
v.
CHIEF EXECUTIVE OFFICER IN CHARGE, Independent Federal Credit Union, and Its Board of Directors, Jan Truman, President, Robert Fesler, Chairman of the Board, Edward Combs, Vice Chairman of the Board, Mary Lou Aynes, Treasurer, Herbert J. Phelps, Secretary, Ralph May, Board Member, Ronald Russell, Board Member, Appellees-Defendants.
No. 27A05-9311-CV-430.
Court of Appeals of Indiana.
June 14, 1995.
Rehearing Denied December 20, 1995.
*81 James E. Freeman, Jr., Jonathan R. Builta, Sansberry, Dickmann, Freeman & Builta, James O. Anderson, E. Lee Handley, John Longnaker, Anderson, for appellants.
M. Kent Newton, Jeffrey C. McDermott, Courtney R. Tobin, Krieg DeVault Alexander & Capehart, Indianapolis, David L. Kiley, Kiley Osborn Kiley Harker Rogers Michael & Certain, Marion, for appellees.

OPINION
RUCKER, Judge.
In this consolidated appeal, Plaintiffs-Appellants Ethel M. McCart, Aubrey C. Hamilton, and Robert F. Hoover (collectively "Plaintiffs") challenge the trial court's grant of judgment on the evidence[1] on their motion to certify class action. Plaintiffs also challenge the trial court's subsequent grant of summary judgment in favor of Defendants-Appellees Independent Federal Credit Union, the Union's Chief Executive Officer in Charge, and members of the Union's Board *82 of Directors (collectively "Credit Union"). Plaintiffs present the following restated issues for our review:
1) Whether the trial court erred in granting involuntary dismissal based upon Plaintiffs' failure to satisfy the requisite elements of class certification?
2) Whether the trial court erred in granting Credit Union's motion for summary judgment on Plaintiffs' individual claims?
We affirm in part and reverse in part.
For several decades, Plaintiffs have been members and savings account depositors of Credit Union. Between the years of 1956 and 1988, Credit Union offered group term life insurance benefits to all qualified member depositors of Credit Union, based upon the insurable balance in each member's savings account. Under the most recent terms of the insurance plan, eligible Credit Union members between the ages of six months and fifty-five years were insured for the full amounts deposited in their savings accounts, with maximum coverage of $2,000.00. Amounts deposited by members between the ages of fifty-five and seventy were subject to decreasing percentages of coverage. After members reached the age of seventy, any money deposited into their savings accounts was excluded from coverage, and new members over the age of seventy were ineligible for insurance coverage. Over the years Credit Union procured the insurance from several different carriers and ultimately decided to discontinue the insurance plan altogether. Prior to the January 1, 1989 termination date, Credit Union offered all member-depositors the option of continuing the life insurance coverage at the members' own expense. Plaintiffs declined to exercise this conversion option and instead sued Credit Union seeking injunctive and declaratory relief as well as money damages for conversion, breach of contract, and wrongful termination. Pursuant to Ind.Trial Rule 23, Plaintiffs thereafter sought to certify the lawsuit as a class action with the named Plaintiffs acting as class representatives. Following Plaintiffs' presentation of evidence at the hearing on class certification, Credit Union moved for involuntary dismissal and the trial court granted the motion. In so doing the trial court entered written findings indicating, among other things: 1) the named Plaintiffs are each seventy years of age or older and are not representative of the class; 2) the named Plaintiffs have failed to identify with specificity the class or subclass sought to be certified; 3) Plaintiffs' claims do not require the joinder of any class; and 4) if Plaintiffs prevail on the merits of their claim then all Credit Union members and depositors would benefit, thus eliminating the need for a class action. In sum, according to the trial court, the named Plaintiffs failed to produce substantial evidence to satisfy the class certification requirements set forth in Ind.Trial Rule 23(A) and (B). The first appeal ensued.
During preparation of the first appeal, proceedings in the trial court continued, with both sides filing motions for summary judgment on Plaintiffs' individual claims. Following a hearing, the trial court granted Credit Union's motion for summary judgment and correspondingly denied Plaintiffs' motion. Plaintiffs then pursued a second appeal, which included a motion with this court to consolidate the two appeals pursuant to Ind.Appellate Rule 5(B). The motion was granted and the consolidated appeal ensued.

I.
Plaintiffs first contend the trial court erred in denying their motion for class certification. According to Plaintiffs, sufficient evidence was presented to the trial court to satisfy the requirements of impracticable joinder, commonality, typicality, and adequate representation as set forth in T.R. 23(A) and at least one element contained in T.R. 23(B).
Ind.Trial Rule 23 establishes a two-step procedure for determining the propriety of class action certification. The trial court must first determine whether the class meets the four preliminary requirements of T.R. 23(A):
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

*83 (4) the representative parties will fairly and adequately protect the interests of the class.
Additionally, a class action that satisfies all four of the T.R. 23(A) requirements must also satisfy at least one of the three subsections of T.R. 23(B). The burden of proving the conditions precedent to class certification rests with Plaintiffs and Plaintiffs' failure to meet any one of the mandated prerequisites in T.R. 23(A) results in the denial of class certification. ConAgra, Inc. v. Farrington (1994), Ind. App., 635 N.E.2d 1137, 1140, reh'g denied. A trial court has broad discretion in determining whether an action is maintainable as a class action. CSX Transp., Inc. v. Clark (1995), Ind. App., 646 N.E.2d 1003, 1006; Skalbania v. Simmons (1982), Ind. App., 443 N.E.2d 352, 356, trans. denied. On appeal, we neither reweigh evidence nor judge witness credibility. We affirm if the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom support the trial court's determination. American Cyanamid Co. v. Stephen (1993), Ind. App., 623 N.E.2d 1065, 1070.
In order to satisfy the first requirement of T.R. 23(A), the party moving for class certification must demonstrate that the proposed class is so numerous that joinder of all members is impracticable. T.R. 23(A)(1); CSX, 646 N.E.2d at 1007. Pertinent to this issue, the trial court found that "plaintiffs have failed to specifically identify any number of any class or subclass other than that approximately 20,000 depositors existed with the defendant on December 31st, 1988." Record at 330. According to Plaintiffs, the trial court erred because their good faith estimation of the number of class members is sufficient to comply with the dictates of T.R. 23(A)(1).
The party maintaining a class action bears the burden of demonstrating the impracticability of joinder. Roe v. Town of Highland, 909 F.2d 1097, 1100, n. 4 (7th Cir.1990).[2] This determination is not simply a test of numbers, but rather requires an examination of the specific facts and circumstances of each case. General Tel. Co. v. E.E.O.C., 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Plaintiffs are not required to specify the identities nor exact number of persons included in the proposed class, Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir.1989), and the fact that the number of class members cannot be determined with precision does not defeat certification. Vergara v. Hampton, 581 F.2d 1281, 1284 (7th Cir.1978), cert. denied, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). However, a party moving for class certification may not rely on conclusory allegations that joinder is impractical or upon speculation as to the size of the class in order to satisfy T.R. 23(A)(1). Marcial, 880 F.2d at 957; Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir.1976). Rather, Plaintiffs must supply facts or demonstrate circumstances which provide support for a reasonable estimate of the number of class members. Jones v. Blinziner, 536 F. Supp. 1181, 1189 (N.D.Ind. 1982) quoting 3B Moore's Federal Practice ¶ 23.05(3) (2d ed. 1978); see Marcial, 880 F.2d at 957 (in RICO action against automobile insurer and adjustor stemming from insurer's improper use of polygraph tests, lack of numerosity existed among class of plaintiff policyholders where class certification proposal assumed each plaintiff's claim had been rejected solely on basis of polygraph test results).
Here Plaintiffs sought to certify the following subclasses:
SUBCLASS I  That class of persons who are beneficiaries of life insurance policies of decedent depositors of the Defendant whose policies where [sic] terminated on or about December 31, 1988.
SUBCLASS II  That class of persons who are currently members of the Defendant credit union whose life insurance policies where [sic] terminated on or about December 31, 1988.
SUBCLASS III  That class of persons who are no longer members of the Defendant credit union whose insurance policies *84 were terminated on or about December 31, 1988.
Record at 32.[3] In their Complaint and Motion to Certify Class, Plaintiffs assert that although each subclass is "unknown in number," Record at 12-13, the entire proposed class size exceeds 20,000 persons and, as such, renders joinder impracticable. Citing Sprague v. General Motors Corp., 843 F. Supp. 266 (E.D.Mich. 1994), Plaintiffs further argue that because the Sprague court certified a class consisting of approximately 40,000 member-plaintiffs, "it is clear that the approximation of 20,000 class members by [Plaintiffs] herein is sufficiently definite." Reply Brief at 8.
Plaintiffs' reliance on Sprague is misplaced. In Sprague the 40,000-person figure represented the approximate number of qualified putative class members, consisting of all salaried retirees of GM who took or agreed to take early retirement prior to March 1, 1988, or their surviving spouses. In contrast, here the 20,000-person figure advanced by Plaintiffs represents an approximation of Credit Union's entire membership. However Plaintiffs do not seek to include all Credit Union members in the class; rather the class as defined by Plaintiffs consists only of the narrower number of Credit Union savings account depositors who received life insurance policies or were beneficiaries thereof. It was Plaintiffs' burden to proffer a good faith estimation of the portion of Credit Union's membership comprising the specific class sought to be represented. Yet neither before the trial court nor before this court have Plaintiffs provided evidence nor demonstrated circumstances which would provide support for a reasonable estimate of the number of class members. Indeed, it is impossible to determine whether the class consists of two or three people or thousands. Hence Plaintiffs have only speculated that the class is so numerous that joinder of all members is impracticable. Accordingly we conclude, as did the trial court, that Plaintiffs have failed to provide evidence to sustain a finding of impracticable joinder. The trial court did not abuse its discretion in determining that Plaintiffs failed to satisfy the requirements of T.R. 23(A)(1).[4]

II.
Plaintiffs next contend the trial court erred in granting summary judgment in Credit Union's favor.[5] According to Plaintiffs, issues of material fact exist concerning whether various brochures, newsletters, and oral representations generated by Credit Union served to create an implied in fact contract which now prohibits Credit Union from terminating life insurance benefits.[6] When reviewing a grant of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving *85 party is entitled to judgment as a matter of law. Montgomery County Farm Bureau Coop. Ass'n, Inc. v. Deseret Title Holding Corp. (1987), Ind. App., 513 N.E.2d 193, reh'g denied. We must consider the pleadings and evidence sanctioned by T.R. 56(C) without deciding their weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Houin v. Burger by Burger (1992), Ind. App., 590 N.E.2d 593. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. Liberty Mut. Ins. Co. v. Metzler (1992), Ind. App., 586 N.E.2d 897, trans. denied.
An implied in fact contract refers to the class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. See City of Indianapolis v. Twin Lakes Enters., Inc. (1991), Ind. App., 568 N.E.2d 1073, 1078, trans. denied; Williston on Contracts § 1.5 at 20 (1990). Unlike implied in law or quasi-contracts, which do not arise from the parties' express agreement but which are implied by law to remedy a party's wrongful enrichment, Hartke v. Moore-Langen Printing & Publishing Co., Inc. (1984), Ind. App., 459 N.E.2d 430, a contract implied in fact arises out of acts and conduct of the parties, coupled with a meeting of the minds and a clear intent of the parties in the agreement. McQueeney v. Glenn (1980), Ind. App., 400 N.E.2d 806, 811, cert. denied, 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112; Dyer Constr. Co., Inc. v. Ellas Construction Co., Inc. (1972), 153 Ind. App. 304, 287 N.E.2d 262. We have previously explained the law of implied in fact contract as follows:
An implied contract, that is, one wherein an agreement is arrived at by the acts and conduct of the parties, is equally as binding as an express contract, wherein the agreement is arrived at by their words, spoken or written. In either case it grows out of the intention of the parties to the transaction. If there has been a meeting of minds and the clear intent of the parties to the transaction is evidenced by their acts and conduct viewed in the light of the surrounding circumstances, then the resultant implied contract differs from an express contract only in the mode of proof.
Retter v. Retter (1942), 110 Ind. App. 659, 40 N.E.2d 385, 386.
Here Credit Union's motion for summary judgment was supported by T.R. 56 materials demonstrating that Credit Union complied with applicable statutory regulations in terminating the group insurance program. In addition, Credit Union designated portions of insurance policies which advised Plaintiffs, among other things, that the group insurance program could be amended or discontinued without Plaintiffs' consent. In response, Plaintiffs concede that pursuant to Ind. Code § 27-1-12-41 and -42 governing group life insurance policies, Credit Union fully complied with its statutory mandate of providing member depositors proper notice and conversion options prior to termination. Plaintiffs nonetheless assert that through the dissemination of written materials and oral representations, Credit Union offered to provide life savings insurance to Plaintiffs for as long as Plaintiffs maintained money in their savings accounts. Plaintiffs allege that in reliance upon these representations they deposited money into Credit Union savings accounts and by so doing an implied in fact contract was formed "in which the Credit Union promised to provide the life savings insurance policies in exchange for the [Plaintiffs] making savings deposits to the Credit Union." Appellant's Brief # 2 at 25. Thus, the argument continues, Credit Union's termination of the insurance policies at issue constitutes breach of this implied in fact contract to continue providing insurance to Plaintiffs. Plaintiffs' designated T.R. 56 materials cite portions from the three Plaintiffs' depositions in which each plaintiff testified that they considered the insurance to be a valuable benefit, that Credit Union's oral and written representations regarding the provision of insurance induced Plaintiffs to establish and maintain savings accounts, and that in so doing they believed "that the Credit Union could not cancel the life insurance policy." Record at 432-33. Plaintiffs additionally *86 designated several documents disseminated by Credit Union stating in pertinent part: "Your Life insurance is in effect so long as you maintain shares in the Credit Union. It does not decline as you grow older, according to our present contract... ." Supp. Record at 376; "Once insured, you keep the insurance as long as your money is in the credit union and the contract is in force." Supp. Record at 422; and "You have this insurance as long as you leave your money in the Credit Union." Record at 788.
In reviewing a grant of summary judgment, the contents of all pleadings, affidavits, and testimony are liberally construed in the light most favorable to the non-moving party. Ayres v. Indian Heights Volunteer Fire Dep't, Inc. (1986), Ind., 493 N.E.2d 1229, 1234. Here Plaintiffs have presented facts to contradict Credit Union's assertion that, as a matter of law, no mutual assent to contract existed. We agree with Plaintiffs that the acts and representations of the parties give rise to conflicting inferences regarding the terminability of the group insurance plan. These conflicting inferences are properly resolved by a trier of fact and summary disposition is therefore inappropriate. Accordingly, we must reverse the trial court's entry of summary judgment in Credit Union's favor.[7]
The parties last dispute the propriety of the trial court's grant of Credit Union's Motion to Strike Plaintiffs' Amended Affidavits. The record discloses that in opposition to Credit Union's motion for summary judgment as well as in support of their own motion, Plaintiffs tendered affidavits of the three named plaintiffs which Plaintiffs later amended. According to Plaintiffs, the trial court abused its discretion in failing to consider the affidavits in ruling on the summary judgment issues before it. Credit Union counters that the affidavits were properly excluded because, among other things, they were untimely filed, contained hearsay, and presented irrelevant and contradictory information. However, we need not resolve this issue because in any event sufficient designated materials other than Plaintiffs' affidavits were presented to the trial court. These designated materials are sufficient to raise a genuine issue of material fact precluding summary judgment.
We affirm the trial court's denial of class certification. We reverse the grant of summary judgment in favor of Credit Union, and remand this cause for further proceedings.
DARDEN, J., concurs.
BARTEAU, J., dissents with separate opinion.
BARTEAU, Judge, dissenting.
I respectfully dissent.
In order to have an action certified as a class action, Plaintiffs must satisfy the two-prong requirements of Ind. Trial Rule 23(A) & (B). Plaintiffs must first satisfy the preliminary requirements found in T.R. 23(A)(1)(4), commonly referred to as the requirements of "numerosity," "commonality," "typicality," and "adequate representation." Second, Plaintiffs must satisfy T.R. 23(B)(1), (2) or (3). I find that Plaintiffs have satisfied these necessary requirements and that the trial court abused its discretion in denying certification of the class.

"Numerosity"
The majority finds Plaintiffs failed to satisfy the "numerosity" requirement of T.R. 23(A)(1), concluding that the 20,000-person figure advanced by Plaintiffs represents an approximation of the Credit Union's entire membership, but is not a good faith estimation of the class to be certified. However, under Plaintiffs's allegations, all of the approximately 20,000 members of the credit *87 union could be joined as class members in this action.
Plaintiffs claim that, from 1946 through December 31, 1988, the Credit Union offered group life insurance to all eligible members of the Credit Union as an automatic benefit. Thus, all eligible persons who were members of the Credit Union prior to and through December 31, 1988 were eligible for the life insurance program Plaintiffs now seek to enforce. To estimate this number, Plaintiffs presented evidence of the total membership of the Credit Union on December 31, 1988.
Plaintiffs bear the burden of demonstrating that the class is so numerous that joinder of all members is impracticable. T.R. 23(A)(1). Generally, a precise accounting of the total number of class members is not required. See, e.g., Graham v. Security Savings & Loan (N.D.Ind. 1989), 125 F.R.D. 687, aff'd, (7th Cir.1990), 914 F.2d 909; In re Three Mile Island Litigation (M.D.Penn. 1982), 95 F.R.D. 164. What is required is a good faith estimate of the class size. Jones v. Blinziner (N.D.Ind. 1982), 536 F. Supp. 1181. This is especially true when, as here, the exact number of class members is not known by the claimants, but is readily available to the defendants who have the means to identify them. Folsom v. Blum (S.D.N.Y. 1980), 87 F.R.D. 443.
I agree that the 20,000-person figure does not estimate the size of Plaintiffs's proposed sub-classes within the total class. But that does not render Plaintiffs's estimate of the total class insufficiently accurate or one made in bad faith. Plaintiffs have demonstrated that the total class is so numerous that joinder of all members is impracticable.[8]

"Commonality"
In its order denying certification, the trial court made no mention of whether Plaintiffs failed to satisfy the "commonality" requirement of T.R. 23(A)(2). Plaintiffs allege that the Credit Union wrongfully terminated life insurance coverage for all class members, in violation of a common agreement between the Credit Union and the class members. Plaintiffs allege that the Credit Union breached the same agreement with all the class members and did so in the same manner, if not by the same act. Clearly, there are questions of law or fact common to the class.

"Typicality" & "Adequate Representation"
In its order denying certification, the trial court included the following findings and conclusions:
A. That each plaintiff is seventy years or more of age and are not now representative of any person or class arising under the life insurance program offered by defendants until December 31st, 1988.
* * * * * *
C. That the claims of the plaintiffs, which have become moot at this time due to their age, is one of injunctive relief, i.e. to order the defendants to reinstate a life insurance program for the benefit of its depositors and members, is a claim that does not require the joinder of any class. Thus, the claims of the plaintiffs would benefit all qualified members and depositors of the defendant.
D. That if the plaintiffs prevail upon their individual claims against the defendant, all members and depositors of the defendant would benefit from the relief requested by the plaintiffs without the necessity of the action being deemed a class.
The trial court found that, since all of the representative Plaintiffs were at least seventy-years-old, none of them were entitled to the life insurance proceeds they were seeking. Thus, the trial court concluded that the representative Plaintiffs's claims were moot, atypical of the class, and that the representative Plaintiffs could not adequately represent the proposed class. I find the trial court's conclusion erroneous.
To state Plaintiffs's claims in simplified terms, under the Credit Union's life insurance program, the coverage afforded to each *88 member was based upon the amount of money each person deposited with the Credit Union according to a graduated scale. Money saved while a member was under the age of 55 accrued $1 of life insurance coverage for every $1 that person deposited. A person between the ages of 55 and 59 accrued $.75 of coverage for every $1 saved during that time. Between the ages of 60 and 64, members accrued $.50 for every $1 saved, and between 65 and 69, members accrued $.25 for every $1 saved. When the members reached the age of 70, the money they deposited no longer accrued life insurance benefits.
The trial court concluded that members over the age of 70 were not entitled to life insurance proceeds, and therefore the representative Plaintiffs who all are over 70 could not represent the claims of the class. This conclusion is erroneous for two reasons. First, the trial court has effectively resolved the underlying claims of Plaintiffs by determining they are not entitled to insurance coverage. In determining whether a class should be certified, the trial court's focus should be on whether Plaintiffs's claims are typical of the class, not whether the claims are meritorious. T.R. 23(A)(3). Here, the trial court effectively resolved the parties's dispute in favor of the Credit Union without allowing Plaintiffs to put forth any proof.
Second, according to the claims of Plaintiffs, members did not lose life insurance benefits upon reaching the age of 70, contrary to the trial court's conclusion. Plaintiffs contend that, once members reached the age of 70, the money they deposited thereafter no longer accrued insurance benefits. However, members retained the coverage they accrued from their deposits during the previous years. Regardless of the merits of their claims, Plaintiffs contend that they, like the rest of the proposed class, are entitled to life insurance coverage. The trial court abused its discretion in wrongfully denying class certification by deciding the ultimate issue in this matter, rather than basing its decision on the claims of the class.

T.R. 23(B)(2) & "Necessity"
Finally, I find that Plaintiffs's claims fall squarely within T.R. 23(B)(2), in that the Credit Union has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. In denying class certification, the trial court went beyond the specific requirements of T.R. 23, and found that class certification was not "necessary" to achieve the result Plaintiffs sought.
Some jurisdictions hold that class certification may be denied when the plaintiffs's individual claims for injunctive or declaratory relief, if successful, would benefit the entire class, even though the specific requirements for class certification have been met. See, e.g. James v. Ball (9th Cir.1979), 613 F.2d 180; Davis v. Smith (2d Cir.1978), 607 F.2d 535. Often this additional requirement is invoked when the parties dispute a broad-sweeping issue that, if successful, would inure to the benefit of all regardless of class certification.
However, not all jurisdictions recognize the "necessity" requirement, and the Seventh Circuit has flatly rejected its application. Brown v. Scott (7th Cir.1979), 602 F.2d 791, aff'd on other grounds sub nom, Carey v. Brown (1980), 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263; Vergara v. Hampton (7th Cir.1978), 581 F.2d 1281, cert. denied, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373; Paul v. Indiana Election Bd. (S.D.Ind. 1990), 743 F. Supp. 616. And, the jurisdictions that permit trial courts to consider the "necessity" of class certification do so only if the court is certain that judgment in favor of the individual plaintiffs will inure to the benefit of the entire class.
[T]hose courts that have declined to certify a class [due to lack of necessity] "do not merely assume that defendants will comply with the terms of the injunction on a class-wide basis." Cason v. Rochester Housing Authority (W.D.N.Y. 1990), 748 F. Supp. 1002, 1010. Positive assurance regarding future compliance with the injunction as to other class members is required. Id.; Doe v. Coughlin (N.D.N.Y. 1988), 697 F. Supp. 1234, 1235 n. 4; Calkins v. Blum (N.D.N.Y. 1981), 511 F. Supp. 1073, 1089-90, aff'd, (2nd Cir.1982), 675 F.2d 44.
*89 Catanzano v. Dowling (W.D.N.Y. 1994), 847 F. Supp. 1070, 1079. I find that even if we were to decline to follow the lead of the Seventh Circuit and permit trial courts to consider whether class certification is "necessary" in addition to the T.R. 23 requirements, there is nothing present in this case from which the court can be assured that the Credit Union will comply with the terms of an injunction on a class-wide basis. Plaintiffs are suing for a declaration that they are entitled to life insurance coverage. Should the individual Plaintiffs succeed, there is nothing to assure that the Credit Union will not simply procure insurance coverage for the individual Plaintiffs, leaving the rest of the class without benefit.
Plaintiffs have satisfied all the T.R. 23 requirements for class certification of this matter. A class action is appropriate in this matter, and contrary to the trial court's conclusion, is "necessary" to assure the benefit of all members of the proposed class.
For these reasons, I respectfully DISSENT.
NOTES
[1] We observe that a grant of judgment on the evidence pursuant to Ind.Trial Rule 50 is proper only in the context of cases tried before a jury or an advisory jury. T.R. 50(A). Where, as here, a proceeding occurs before the trial court, the sufficiency of a plaintiff's evidence is properly tested by means of a motion for involuntary dismissal pursuant to T.R. 41(B). Nonetheless, the inaccurate designation does not hinder resolution of this appeal on the merits. See Villanella v. Godbey (1994), Ind. App., 632 N.E.2d 786, 790 (defendant's motion for judgment on the evidence in bench trial properly treated as motion for involuntary dismissal).
[2] Because of the similarity between T.R. 23 and the concomitant federal rule, Indiana courts, where feasible, follow parallel federal law in interpreting T.R. 23. See Matter of Tina T. (1991), Ind., 579 N.E.2d 48, 55; Bowen v. Sonnenburg (1980), Ind. App., 411 N.E.2d 390, 397.
[3] Subclasses must satisfy the class action requirements before they may be certified. See T.R. 23(C)(4); Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 599 (7th Cir.1993).
[4] As we have already emphasized, in order to achieve class certification the class applicant must establish all the prerequisites of T.R. 23(A). ConAgra, 635 N.E.2d at 1140. Thus, because we have determined that Plaintiffs failed to meet the impracticable joinder requirement of T.R. 23(A)(1), we need not consider whether the remaining elements of T.R. 23(A) and (B) were satisfied.
[5] Plaintiffs sued Credit Union under various theories of recovery including breach of contract, conversion, and wrongful termination. Although the trial court's order granting summary judgment was general in nature, we limit our analysis on review to the issue of implied in fact contract because the parties' arguments encompass only this theory.
[6] Credit Union asserts that Plaintiffs have waived recovery under the theory of implied in fact contract "by failing to properly plead the theory in their Verified Complaint." Appellee's Brief # 2 at 32. However, a litigant may recover under any theory that is sufficiently supported by the facts pleaded in the complaint. T.R. 8; Palacios v. Kline (1991), Ind. App., 566 N.E.2d 573. Here, the allegations set forth in Plaintiffs' complaint indicate the following: that Credit Union disseminated verbal and written information regarding the life insurance program, that these representations together with Plaintiffs' subsequent deposit of money into their savings accounts resulted in the creation of a contract, and that Credit Union's termination of the insurance program constitutes a breach of contract to provide the foregoing insurance. Plaintiffs have stated operative facts sufficient to proceed under the theory of implied in fact contract.
[7] Although their arguments principally challenge the trial court's grant of Credit Union's motion for summary judgment, Plaintiffs periodically appear to additionally dispute the denial of their own cross-motion for summary judgment. When considering cross-motions for summary judgment, the trial court must deal with each motion separately, construing the facts in favor of the non-moving party. Ace Rent-A-Car, Inc. v. Indianapolis Airport Authority (1993), Ind. App., 612 N.E.2d 1104, 1106, trans. denied. In any event we observe that the conflicting inferences presented by the parties' designated materials give rise to issues of material fact which preclude the entry of summary judgment in favor of either party.
[8] Tacitly, the Credit Union agrees with this conclusion. In its Brief, the Credit Union's only contention is that Plaintiffs failed to demonstrate the size of each sub-class. Appellee's Brief at 11-13. The Credit Union does not contest the numerosity of the total class.