**EDWARD D. JONES & COMPANY, Appellant–Defendant,**

v.

**Cleon F. COLE, Virgil C. and Virginia M. Corll, William F. and Barbara N. Corn, et al., Appellees–Plaintiffs.**

No. 85A02–9309–CV–00504.

Court of Appeals of Indiana, Second District.

Nov. 30, 1994.

---

Edward O. Delaney, Michael R. Frueh-
wald, Anne N. Deprez, Amy B. Judge,
Barnes & Thornburg, Indianapolis, Richard
P. Fisher, Fisher & Ireland, Wabash, for
appellant.

Joseph H. Yeager, Jr., James H. Ham, III, Robert D. Moreland, Baker & Daniels, Indianapolis, Scott L. Starr, Jon M. Myers, Starr Austin & Tribbett, Logansport, Stephen H. Downs, Tiede, Metz & Downs, P.C., Wabash, for appellees.

## *OPINION*

HOFFMAN, Judge.

Appellant-defendant Edward D. Jones & Company ("Jones") appeals from an order certifying a class in an action alleging oral misrepresentations and omissions in the sale of certain investments. The plaintiffs' complaint stems from the facts recited below.

Jones is a national brokerage firm with over 1,600 offices throughout the United States. One branch office is located in Marion, Indiana. Each of the thirty-two plaintiffs were clients of Jones between December 1983 and December 1987. The plaintiffs purchased mutual funds, securities, and other investments from one Jones' employee in particular, Richard Seaman, who worked at the Marion, Indiana office.

Jones portrayed itself to its clientele and the public generally through advertisements, public relations efforts, and its own employees' representations as a small-town conservative brokerage firm selling only low-risk securities and investments. However, according to the complaint, once client confidence was established and while at the same time promoting a conservative philosophy and image, Jones invested in high-risk, high-commission, complex investments. Jones did this without full disclosure of either the material facts associated with the investments or the risks involved. According to the plaintiffs, this conduct was part of a far-reaching scheme orchestrated by Jones to quickly maximize its own profits without regard to the conservative interests of its clients or its intended image.

Although the plaintiffs' business relations with Jones were limited to Seaman, the complaint set forth a detailed account of how Seaman's sales practices were not uniquely his but were instead reflective of Jones' overall method of training its sales force and its specific instructions to its employees concerning their sales. As a result of Jones' investments and Seaman's practices in particular, each of the named plaintiffs alleged they suffered substantial losses of all or most of their initial investments.

Consequently, in February 1992, the plaintiffs initiated this action by filing a complaint in the Wabash Circuit Court. The plaintiffs alleged, *inter alia,* violations of the Indiana Securities Act, IND.CODE § 23-2-1-1 *et seq.* (1982 Ed.); the Indiana RICO Statute, IND.CODE § 34-4-30.5-1 *et seq.* (1982 Ed.); as well as common-law theories of actual and constructive fraud. In May 1993, on motion by the plaintiffs and after conducting a hearing, the trial court certified this action as a class action. The trial court defined the class as encompassing:

"All persons who at any time purchased securities* from ... Seaman while he was an employee/representative of [Jones] and who have since sold the investment on or before October 1, 1993; and, who meet one or more of the following criteria:

1. The sales price received for the investment was less than the investor paid for the investment after excluding any increases in the value of the investment resulting from any reinvestment of dividends.

2. The investment was purchased in reliance upon specific representations made by ... Seaman as to the income to be expected on the investment, including fixed periodic payments; and, the investment failed to produce the income represented to be received.

AND

All persons who at any time purchased limited partnership interests from ... Seaman while he was an employee/representative of [Jones] and who meet both of the following criteria:

1. The interest was purchased in reliance upon specific representations made by ... Seaman that the investment was 'no risk' or 'low risk' or similar words to that effect; and, the investment was actually one of 'significant risk' or 'high risk'; and,

2. The value of the limited partnership interest as of October 1, 1993 was at least 15% less than the sales price paid for that interest...."

Jones now appeals.

On appeal, Jones raises several issues which we consolidate into two:

(1) whether the trial court properly certified this action as a class action; and

(2) whether the class was properly defined by the trial court.

■ An abuse of discretion standard is employed for our review of a trial court's certification of a class; we neither reweigh the evidence nor judge the credibility of witnesses. *American Cyanamid Co. v. Stephen* (1993), Ind.App., 623 N.E.2d 1065, 1070. If, viewing the evidence most favorable to the judgment as well as all reasonable inferences to be drawn therefrom, we find there is substantial evidence to support the trial court's ruling, we will affirm. *Id.* Although T.R. 23(C) requires a hearing before class certification, the plaintiffs are not required to establish the likelihood that they will ultimately succeed on the merits. *Bowen v. Sonnenburg* (1980), Ind.App., 411 N.E.2d 390, 401; *see Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748. The trial court entered special findings of fact and conclusions of law on Jones' motion. *See* Ind.Trial Rule 52(A). Thus, this Court employs a two-tiered standard of review. *American Cyanamid,* 623 N.E.2d at 1070. We will first determine whether the findings support the judgment. *Id.* Next, we will determine whether the conclusions of law and resulting judgment are clearly erroneous based on the facts as set forth by the trial court. *Id.* On appeal, Jones challenges only the trial court's findings as to commonality, typicality, and predominance of common questions under Ind.Trial Rule 23.

■ Ind.Trial Rule 23 requires that there be "questions of law or fact common to the class," T.R. 23(A)(2), and that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, T.R. 23(B)(3)." These two elements are satisfied if the court finds the claims of the individual plaintiffs are derived from a common nucleus of operative fact. *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 426, 436; *see Skalbania v. Simmons* (1982), Ind.App., 443 N.E.2d 352, 359 A common nucleus of operative fact exists where there is a common course of conduct. *See Skalbania,* 443 N.E.2d at 358; *In re American Continental/Lincoln S & L Sec. Lit.* (D.Ariz.1992), 140 F.R.D. 425, 430; *Kirkpatrick v. J.C. Bradford & Co.* (11th Cir. 1987), 827 F.2d 718, 724, *cert. denied,* (1988) 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421.

■ The trial court found the existence and implementation of a common scheme by Jones to defraud its clients to be a common nucleus of operative fact establishing the above elements. However, Jones maintains Seaman's fiduciary duty of full disclosure, as well as issues of reliance, causation, damages, and statutes of limitations, relating to the actual and constructive fraud claims, are all individual issues not provable on a common basis.

An argument very similar to this one was rejected by this Court in *Skalbania,* 443 N.E.2d at 358–59 (rejecting argument that fraud is too individualized for class action treatment). In the same vein, in *American Continental,* class action treatment was found to be appropriate in a securities fraud action where although plaintiffs' claims were not identical, their claims were united by a common thread—a standardized sales pitch by the defendant to lure plaintiffs to buy certain securities. *American Continental,* 140 F.R.D. at 431. The *American Continental* court specifically rejected defendant's argument that class actions are not maintainable where alleged fraud is consummated primarily through oral misrepresentations unless the representations are identical. *Id.* The court reasoned the gravamen of the alleged fraud is not the specific representations but rather the "whole roster of deception designed to contrive a false image of [defendant]." *Id.* at 431. As the court specifically stated,

"The center of gravity of the fraud transcends the specific details of oral communications.... [T]he alleged fraud [is] not

conceived or perpetrated by the [defendant's representatives] themselves. Rather, they [are] merely conduits of information communicated to them by or with the help of Defendants.

\* \* \* \* \* \*

The exact wording of the oral misrepresentations, therefore, is not the predominant issue. It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again."

*Id.; see Kirkpatrick*, 827 F.2d 718, 724 (class action treatment found to be warranted where plaintiffs did not rely on written prospectuses and other written materials but rather oral representations of sales brokers which were part of common course of conduct to misrepresent financial condition).[1]

Here, the critical focus of plaintiffs' argument does appear to be that Jones applied standardized oral misrepresentations to induce its customers to enter into high-risk investments through the use of "canned sales pitches." Plaintiffs' complaint offers a detailed account of the scheme. At the hearing, plaintiffs also submitted various charts, company publications, and brochures along with witness testimony of the plaintiffs and former employees of Jones to illustrate the scheme.

These exhibits and testimony demonstrate the alleged scheme was employed by Jones at the Marion office through Seaman only. Further, Jones' training material mandated that brokers were not allowed to be analysts, only salespersons. Employees were taught through standardized procedures the "KISS"[2] method of selling securities. Jones provided its brokers with precisely worded canned sales pitches such as "Mr. Investor, this is just an excellent investment and if you have the funds available I think you should buy some today." At the instruction of Jones, this line was to be practiced on family and company trainers until the phrase became an integral part of their normal speech patterns. Moreover, there was evidence that Jones discouraged its employees from reading any written prospectus. Instead, sales pitches tailored to blue sheets were periodically given to employees to use on their clients in obtaining a sale on the latest approved investment.

An article in "Uptick," Jones' intra-company publication, referred to Seaman as the firm's "Golden Boy" for his having net $20,000.00 in commissions for 26 consecutive months. There, Seaman attributed his success and high profit margin to "his practice of following every instruction he received from the home office ..." and "[doing] everything the firm told [him] to...."

According to the article, Seaman had not changed his selling style much since first joining the firm. Cathy Shields, Seaman's former secretary, substantiated this fact by explaining that Seaman's technique was consistent varying little from client to client. Shields related a very specific pattern wherein at the conclusion of client meetings, Seaman walked clients to the door, reassured them of the safety of their investments, and then patted them on their backs while reiterating the conservative nature of Jones and its dedication to investing only in safe, guaranteed investments.

Employees were trained on avoiding questions of concerned investors. According to Shields, when customers approached Seaman about his investment practices, he avoided questions through use of rehearsed blanket statements and by directing client's attention to other areas of concern.

Finally, at the hearing, plaintiffs introduced a chart to illustrate the extent of consistency in Seaman's sales techniques and representations to clients. For example, it

---

**1.** We note that under certain circumstances class treatment for a securities fraud action is inappropriate. *See e.g. Kirkpatrick*, 827 F.2d at 725 (court refused to certify class as to state law fraud claims because purchases took place in several states and thus necessity of applying differing states' fraud laws); *Zandman v. Joseph* (N.D.Ind.1984), 102 F.R.D. 924 (rejecting certification where there were numerous defendants requiring application of differing state fraud laws and representative plaintiff's contacts with defendants were not typical of others in class).

**2.** "KISS" means "keep it simple stupid."

was claimed that Seaman made at least one of the following representations to all plaintiffs: (1) Jones' investments were conservative in nature, (2) they were safe or the plaintiff's principal was safe, (3) the investments were such that plaintiffs could not lose, or (4) the investments were guaranteed or were risk-free.

The above facts provide substantial evidence of a course of conduct on Jones part to engage a scheme to defraud its clients. As properly found by the trial court, the focus of plaintiffs' action will be on Jones' standardized method of selling securities, its method of training its sales force and in particular, Seaman. Thus, T.R. 23(A)(2) and T.R. 23(B)(3) are satisfied.

Next, Jones challenges the court's finding as to typicality. *See* T.R. 23(A)(3). In support of its argument, Jones points to discrepancies between the plaintiffs' economic and educational backgrounds, differences in their investment patterns, the time span for the plaintiffs' investments, the fact that not all of Seaman's investments are the subject of this suit, the oral nature of the representations, and the individuality of proof for fraud claims.

However, T.R. 23(A)(3) does not require a showing that all plaintiffs' claims be identical. *Arnold*, 398 N.E.2d at 436. Rather, this element is satisfied if it is shown that the representative plaintiff's claims are neither in conflict with nor antagonistic to the class as a whole. *Id.* Although facts differ factually, typicality may be satisfied through the existence of the same legal theory of the plaintiffs' claims and defenses. *Id.; See Edgington v. R.G. Dickinson & Co.* (D.Kan. 1991), 139 F.R.D. 183, 189. Jones has failed to show how the plaintiffs' claims are either in conflict with or antagonistic to the class as a whole. The trial court correctly found typicality to be satisfied by the alleged existence of a common scheme from which all plaintiffs suffered damages.

Last, Jones claims error in the trial court's definition of the class. As set forth by the trial court, the subclass pertaining to partnership interests appropriately encompasses those persons who in reliance upon Seaman's specific representations, purchased partnership interests from him and subsequently sustained a loss on their investments. However, the subclass as it pertains to other securities is overbroad. The language impermissibly permits into the class those persons who have merely sustained a loss on their investments without regard to any reliance on representations made by Seaman. Accordingly, we remand this action to the trial court with instructions to modify the class definition consistent with this opinion.

Affirmed in part; reversed and remanded in part.

STATON and KIRSCH, JJ., concur.