**INDIANA BUSINESS COLLEGE,**
Appellant–Defendant,

v.

Tracy V. HOLLOWELL, et al.,
Appellees–Plaintiffs.

No. 84A01–0403–CV–116.

Court of Appeals of Indiana.

Nov. 24, 2004.

John H. Haskin, Bradley L. Wilson, Andrew G. Jones, Haskin, Lauter & LaRue, Indianapolis, IN, Attorneys for Appellant.

Eric A. Frey, Frey Law Firm, John P. Nichols, Anderson & Nichols, Terre Haute, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

Indiana Business College ("IBC") brings this interlocutory appeal of the trial court's order certifying as a class action the lawsuit brought by Tracy V. Hollowell and forty-six other plaintiffs asserting their claims of fraud by IBC.

We affirm.

### *ISSUE*

Whether the trial court erred in certifying the class pursuant to Indiana Trial Rule 23.

### *FACTS*

On November 5, 1999, Hollowell and four other plaintiffs brought an action against IBC alleging, *inter alia,* fraud by IBC. Plaintiffs alleged that they had been students in IBC's Medical Coding program; that IBC had falsely represented that upon completion of that program at its various campuses, plaintiffs would be eligible for employment in that field; and that they had incurred damages in their reliance on these false representations. They further alleged they were representative of a class of many persons similarly

situated and asked the court to "certify this action as a class action under Rule 23" and that the court notify those similarly situated. (App.26). Their complaint included a copy of pages from the 1999 IBC "Information Guide" and the 1996 IBC catalog.

On August 29, 2000, the plaintiffs filed a motion to certify, citing T.R. 23(B)(2). The motion alleged that they represented "present and former students of [IBC] who enrolled in or graduated from the Medical Coding programs" from 1994—1999; that the class "being at least 840 persons," was "so numerous that joinder of all members is impracticable"; that there were "questions of law and fact common to the class in that [IBC] defrauded all such persons by making written and oral" misrepresentations about the accreditation of the Medical Coding program and its preparation of students for employment; that their claims were "typical of the claims of the class whose interests the plaintiffs will fairly and adequately protect"; that plaintiffs had "all expended monies for tuition, fees, books and other costs which are typical for all the students who enrolled in [IBC]'s Medical Coding classes and all such persons were similarly affected by the loss of such monies, the lack of employment in the Medical Coding field and the loss of wages caused by [IBC]'s fraud"; and that they "and the class they represent" had suffered "injury by reason of [IBC]'s conduct." (App.39, 40). The motion asked the trial court to "certify this cause as a class action" and direct "individual notice to each member of the designated class." (App.40).

After a hearing on the motion to certify on November 6, 2000, the trial court ordered additional discovery. Specifically, the trial court ordered IBC to provide to plaintiffs the names and addresses of the 840 students from the Medical Coding program at all IBC campuses, information about those students' post-graduation employment, and the manuals given students at each campus from 1994 through 1999.

From May 2001 until June of 2003, a series of amended complaints were filed. The number of plaintiffs increased, but in each, the plaintiffs alleged fraud by IBC as to their education in the Medical Coding program and sought class action certification in that regard. Further, none of the complaints ever sought injunctive relief. The ultimate amended complaint named forty-seven plaintiffs, all graduates of IBC's Medical Coding program.

In the meantime, on June 14, 2002, the plaintiffs filed a renewed motion to certify, again citing T.R. 23(B)(2). Their allegations generally repeated those in their 2000 motion to certify. However, their motion also referenced deposition testimony of Vinnie Dean Pinegar, who had been the director of the Medical Records Department of Terre Haute Regional Hospital for eleven years and had taught three courses in the Medical Coding Program at IBC in 1997 and 1998. The motion stated that Pinegar had "opined that [IBC] did not and still cannot adequately prepare students for positions as medical coders," and cited her testimony that she had "some reservations about possibly what the students were being told as to what would really happen once they got out of school" and "was afraid that the expectations of the students upon graduation were something that in actuality really wasn't going to happen." (App.58). The motion included the Pinegar deposition as an exhibit, and it asked the trial court to "certify this cause as a class action" and to direct "individual notice to each member of the designated class." (App.59).

On July 30, 2002, IBC filed its opposition to the plaintiffs' renewed motion to certify. IBC argued the plaintiffs had failed to

establish the prerequisites of T.R. 23(A)(1)—(4) and to provide evidence to support certification under T.R. 23(B)(2).

On October 31, 2003, the trial court held a hearing on the renewed motion to certify. Counsel for the plaintiffs argued the numerosity requirement was met, in that the number of students graduating from IBC's Medical Coding program had continued to increase since the number of 840 given by IBC as of 1999. Regarding common questions of law or fact, counsel argued that the materials produced as a result of the 2000 discovery order revealed that it was identical for all IBC locations, evidencing "the same representations." (Tr. 9). Counsel further argued that the plaintiffs were "representative of the people who went through the Medical Coding program" and "spent money," "took the same classes, have the same certification" and then found they were not qualified for employment in the field. (Tr. 10). Counsel also argued the forty-seven plaintiffs were "earnest about this case," and that his firm and that of co-counsel had "experience in class action cases." (Tr. 11). Finally, counsel argued that as "an economic experience for the court system," a class action was "the most efficient manner" of proceeding, and that there was "no other class action pending on this issue." (Tr. 14, 15).

Counsel for IBC then proffered a request for special findings of fact and conclusions of law, noting that no admissible evidence had yet been presented. Counsel for IBC proceeded to argue that the plaintiffs' motions to certify cited T.R. 23(B)(2), which concerned "whether injunctive relief is proper in this case," and that it was "here today" to argue "injunctive relief relating to the fraud claim." (Tr. 16–17). Counsel argued that the plaintiffs presented "no evidence" as to why its fraud claim "should be certified," simply the argument of its counsel. (Tr. 17). Counsel argued the lack of "questions of law or fact common to this class" inasmuch as IBC had "deposed 12 individuals to date" and had discovered "material variations" as to "the representations made" by IBC and "when the reliance took place." (Tr. 18, 19). IBC further argued that the plaintiffs could not be representative of the proposed class because "20% of the named plaintiffs have found jobs." (Tr. 21). Counsel characterized Pinegar's deposition testimony as "hearsay and conclusory assertions." (Tr. 22). Finally, counsel argued that injunctive relief was "not proper" because the plaintiffs' "own complaint" did not seek injunctive relief but rather sought damages. (Tr. 24). IBC's counsel asked the trial court to deny certification because "no evidence has been presented," and "it's under the wrong section, 23(B)(2), when it should probably properly be under 23(B)(3)." (Tr. 24–25).

In response, counsel for the plaintiffs stated that he had "made a typographical error"; that this was "not about injunctive relief" but was "a (B)(3) class action" as indicated by the substance of the motion. (Tr. 26).

On January 2, 2004, the trial court issued its findings of fact and conclusions of law. The trial court found that the plaintiffs had brought the action on behalf of graduates of IBC's Medical Coding program; that the plaintiffs' attached material from IBC showed IBC had represented that upon completion of the program, the plaintiffs would find employment; that plaintiffs alleged IBC knew this representation was false and constituted fraud; and that plaintiffs alleged their reliance upon IBC's false representations resulted in damages to them. The trial court further found that based upon the number of graduates indicated at the November 2000 and October 2003 hearings, there were "a sub-

stantial number of graduates" potentially affected by the action. (App.28). The trial court then made the following conclusions of law:

—The plaintiffs' motion "inadvertently referred to T.R. 23(B)(2)," but their "pleading and arguments" made clear their reliance on another section.[1] *Id.*

—The claims of 47 named plaintiffs that "they have been damaged by" the alleged actions of IBC were "sufficient to meet the numerosity requirement of Rule 23." (App.31).

—The plaintiffs' "allegation of a common course of conduct by IBC in that it made representations in its written catalog and brochure which plaintiffs claim they relied upon were, in fact false" was sufficient to "meet the commonality requirement and raise common questions of law and fact which will need to be resolved." (App.31–32).

—The 47 named plaintiffs were "typical of the class" and would "fairly and adequately represent the class"; nothing indicated that the plaintiffs' counsel could not "fairly and adequately represent the class"; and their counsel were "known by the Court to be experienced trial attorneys." (App.32).

—Requiring separate actions would impair the ability of absent class members to protect their rights, would burden Indiana courts, and might result in inconsistent and conflicting results.

—Common questions of law and fact existed and predominated in the action.

The trial court then concluded that the requirements of Rule 23(A) and (B)(3) were met, and it certified a class consisting

"of all those graduates of the IBC medical coding program from 1993 to the present." (App.33).

## DECISION

Indiana Trial Rule 23 establishes a two-step procedure for determining the propriety of class action certification. *McCart v. Chief Executive Officer, Independent Federal Credit Union,* 652 N.E.2d 80, 82 (Ind. Ct.App.1995), *trans. denied.* First, the trial court must determine whether the class meets the four preliminary requirements of T.R. 23(A):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* (quoting T.R. 23(A)).

If a class action satisfies all four of the T.R. 23(A) requirements, the second step is to satisfy at least one of the three subsections of T.R. 23(B). *Id.* at 83. T.R. 23(B)(1) is not implicated here. T.R. 23(B)(2) applies when the party opposing the class has acted in a manner "making appropriate final injunctive relief." For T.R. 23(B)(3), the trial court must

find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available

---

1. The trial court's order actually states that the plaintiffs' pleading and arguments "made it clear that" that they were "relying upon the provisions of T.R. 23(B)(1)," but then the trial court continued to engage in an analysis of factors leading to its conclusions that the plaintiffs had met the requirements for certification pursuant to T.R. 23(B)(3). Thus, "inadvertence" also apparently affected the typing of this single character in the trial court's order.

methods for the fair and efficient adjudication of the controversy.

T.R. 23(B)(3).

■ Whether the prerequisites to class certification have been met is question of fact, a determination to be made by the trial court. *Hefty v. Certified Settlement Class*, 680 N.E.2d 843, 851 (Ind. 1997). The trial court has broad discretion in determining whether an action is maintainable as a class action. *McCart*, 652 N.E.2d at 83. The burden of proving the conditions precedent to class certification rests with the plaintiffs. *Id.* On appeal, we neither reweigh evidence nor judge witness credibility, and we affirm "if the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom support the trial court's determination." *Id.* (citing *American Cyanamid Co. v. Stephen*, 623 N.E.2d 1065, 1070 (Ind.Ct.App.1993), *trans. denied* ).

IBC argues that the trial court committed reversible error when it certified the class action because "the record is devoid of evidence sufficient to prove the necessary requisites set forth in T.R. 23," and inasmuch as the trial court "made special findings," our standard of review requires us to determine whether the evidence supports those findings. IBC's Br. at 5, 6 (citing *King v. Wiley*, 785 N.E.2d 1102, 1109 (Ind.Ct.App.2003), *trans. denied*, for the standard of review). We find this argument unpersuasive based upon the facts before us here.

The plaintiffs moved to have their action certified as a class action. They attached the deposition of Pinegar to their motion. At the hearing on that motion, the plaintiffs' counsel reviewed the multiple factual allegations with which forty-seven individuals had associated themselves in a legal action. These allegations described representations by IBC as to its Medical Coding program, how the individual plaintiffs had expended time and money to participate in the program based upon representations by IBC, and that the plaintiffs had found the representations to be untrue. Plaintiffs' counsel further referred to Pinegar's deposition, indicating that Pinegar had said she "couldn't place the graduates in [her hospital medical records department] because they weren't qualified when they finished the program." (Tr. 5). Plaintiffs' counsel then explained how the evidence adduced in discovery showed that each of the T.R. 23 requisites were satisfied. At this point, IBC moved for special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), pointing out to the trial court that the plaintiffs had presented no actual evidence.[2] IBC then argued its point of view, but it proffered no evidence of its own. For IBC to have moved for findings under the Rule, after noting the lack of evidence and then offering none of its own, and to now challenge the trial court's order based upon a lack of evidence to support the findings is disingenuous and, therefore, unpersuasive.

As IBC acknowledges, in the absence of factual findings by the trial court pursuant to T.R. 52(A), the determination of whether an action should be certified as a class action is "committed to the sound discretion of the trial court." IBC's Br. at 6 (citing *Northern Ind. Pub. Serv. Co. v. Bolka*, 693 N.E.2d 613, 615 (Ind.Ct.App. 1998), *trans. denied* ). Therefore, we will consider whether the trial court abused its discretion here.

■ First, pursuant to Indiana Trial Rule 23(A)(1), the trial court determined

---

**2.** T.R. 52(A) provides that upon the "request of any party filed with the court prior to the admission of evidence, the court ... shall find the facts specially and state its conclusions thereon."

that the class was "so numerous that the joinder of all members is impracticable." *See Bolka,* 693 N.E.2d at 616. Based upon the discovery order of 2000, IBC had indicated to the trial court that there had been 840 students in its Medical Coding program between 1994 and 1999. Arguments of counsel indicated that students had continued to pursue this program into 2003. It is true that the certified class is limited to graduates of the program, and that the number of *graduates* for the earlier time period was less than 840. Nevertheless, there seems to be no dispute that the potential class numbers in the hundreds. We have said that a finding of numerosity "may be supported by common sense assumptions." *Id.* (citing *CSX Trans., Inc. v. Clark,* 646 N.E.2d 1003, 1007 (Ind.Ct.App. 1995)). Further, we have held it to be consistent with common sense and not an abuse of discretion "to conclude that litigating a case involving over one hundred plaintiffs would be impracticable." *Id.* Therefore, we conclude that the trial court did not err in concluding the numerosity prerequisite was met here.

 Next, the trial court determined that there were "questions of law or fact common to the class," T.R. 23(A)(2), the prerequisite that we refer to as "commonality." *Bolka,* 693 N.E.2d at 616. "Commonality is satisfied by a finding that the plaintiffs' claims derived from a common nucleus of operative fact." *Id.* (citing *Edward D. Jones & Co. v. Cole,* 643 N.E.2d 402 (Ind.Ct.App.1994), *trans. denied* ). "A common nucleus of operative fact exists where there is a common course of conduct." *Id.* Plaintiffs argued to the trial

court that IBC's written materials about the program were the same, regardless of the IBC campus involved, and that the plaintiffs had all attended the Medical Coding program, spending time and money thereon, but then found themselves not qualified for the employment indicated by IBC's materials. These factual allegations portray a "common nucleus of operative fact" and "a common course of conduct" by IBC. *Id.* Therefore, the trial court did not abuse its discretion in concluding that the commonality prerequisite was met.

 In addition, the trial court found that the plaintiffs' claims were "typical of the claims … of the class," T.R. 23(A)(3), the prerequisite we refer to as "typicality." *Connerwood Healthcare, Inc. v. Estate of Herron,* 683 N.E.2d 1322, 1327 (Ind.Ct.App.1997), *trans. denied.* "Typicality" does not require a showing that all plaintiffs' claims are identical. *Id.* (citing *Edward Jones* 643 N.E.2d at 405). The "typicality" prerequisite "is satisfied if the representative plaintiffs' claims are neither in conflict with nor antagonistic to the class as a whole." *Id.* Here, all plaintiffs claim that their damages flow from IBC's "single course of conduct," *id.,* namely, misrepresenting its Medical Coding program. *Id.* This supports the trial court's conclusion that the plaintiffs' claims are typical of the class certified: "all the graduates from the medical coding program at IBC." (App.31).[3]

 Indiana Trial Rule 23(A)(4) provides that the "representative parties will fairly and adequately protect the interests of the class." *See Bolka,* 693 N.E.2d

---

**3.** IBC argues that its discovery revealed that not all plaintiffs "received or relied on" IBC's written materials. IBC's Br. at 11. However, as the trial court noted, the plaintiffs "need not prove their claims in order to be entitled to class certification," citing *Bolka,* 693 N.E.2d at 617, and "a certification hear-

ing is not intended to be a trial on the merits, and T.R. 23 does not require a potential class representative to show a likelihood of success on the merits in order to have their claims certified as a class action. *Rose v. Denman,* 676 N.E.2d 777, 781 (Ind.Ct.App.1997)." (App.30–31).

at 618. "Adequacy" requires that "(1) the chosen class representatives not have claims antagonistic to or conflicting with other members of the class; (2) the named representatives have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named representatives be competent, experienced, and generally able to conduct the proposed litigation vigorously." *Id.* We have already discussed the lack of any appearance of conflict or antagonism between the plaintiffs and the class. The fact that the plaintiffs have joined in making the substantial factual allegations contained in the amended complaint indicates their genuine interest in pursuing an outcome. The trial court heard the assertions about counsel's experience in class action matters, and it expressly recognized that counsel were "experienced trial attorneys." (App.32). Accordingly, the trial court did not abuse its discretion when it found the plaintiffs and their counsel would adequately represent the class.

■ Having found that the prerequisites of T.R. 23(A) were satisfied, the trial court also found that the action satisfied T.R. 23(B)(3). Like the "commonality" prerequisite, T.R. 23(B)(3) refers to "questions of law or fact common to the members of the class," but to meet T.R. 23(B)(3), these questions must "predominate over any questions affecting only individual members." *Connerwood,* 683 N.E.2d at 1329. There may be some differences among class members as to whether they received certain materials and when they received them; as to whether they were able to find employment and if so, how and in what area. Nevertheless, there are substantial common facts here: each class member graduated from IBC's Medical Coding program after incurring considerable expense in order to attain that graduation and having

done so relying upon misrepresentations by IBC as to the program. Therefore, the trial court's conclusion that "common questions of law and fact ... predominate in this action" is *not* an abuse of discretion. (App.33).

■ Further, to meet T.R. 23(B)(3), the trial court also must find "that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Here, the trial court found that separate actions might impair the ability of absent class members, result in inconsistent and conflicting results, and burden Indiana courts. It noted "the wisdom and economy of litigating all the claims which may be asserted in one forum" and took judicial notice of the delay that new claimants would face based upon the current schedule of jury trial dates. (App.33). These considerations support the trial court's conclusion that certification as a class action is appropriate under T.R. 23(B)(3). Therefore, we find no abuse of discretion here.

■ IBC also argues that the trial court's order of certification must be reversed because it did not have notice that the plaintiffs sought certification under T.R. 23(B)(3), reminding us that the plaintiffs' own motion to certify cited T.R. 23(B)(2). As the plaintiffs asserted to the trial court, the substance of both motions made clear that they were seeking certification under T.R. 23(B)(3). Further, no complaint had ever sought injunctive relief, the basis of T.R. 23(B)(2). Each complaint expressly asked the trial court to certify a class action *and* to direct notice to each member of the designated class. Both motions to certify also asked the trial court to direct notice to each member of the class. Only when an action is "maintained under subdivision (B)(3)" is the trial court required to direct notice to members of the class. *See* T.R. 23(C)(2). Thus, the record

supports the trial court's conclusion that the reference to T.R. 23(B)(2) was an inadvertent scrivener's error.[4] At the hearing, IBC proceeded to argue against certification based upon information revealed in its discovery. It made no argument as to how that information would have been argued in a different fashion had the plaintiffs specifically cited T.R. 23(B)(3) in their motion. Nor does it make such an argument on appeal. IBC simply asserts that the trial court's decision to grant "a certain form of relief where no such relief had been requested" can be reversed. IBC's Br. at 23, citing *Cavazzi v. Cavazzi*, 597 N.E.2d 1289, 1293 (Ind.Ct.App.1992). However, here, the plaintiffs expressly asked the trial court for certification under T.R. 23(B)(3), and the substance of their motion and their arguments were toward that end. *See* Tr. 26. Therefore, *Cavazzi* is inapposite.

We affirm.[5]

FRIEDLANDER, J., and MATHIAS, J., concur.

---

4. That such a typographical mistake can be overlooked by counsel is evidenced by IBC's own motion to strike, which repeatedly asks this court to strike "Appellees' Index." There has been no filing by appellees of any index. Therefore, we assume IBC meant to ask that we strike the *Appendix* filed by appellees.

5. If IBC meant to ask that we strike the appendix filed by the plaintiffs, we grant that motion. (The plaintiffs filed an appendix that contains a letter from counsel for IBC to plaintiffs' counsel, enclosing "the names and addresses 'of the 840 students from all campuses for the years 1994 through 1999 who graduated from the medical coding class' and information regarding any 'employment the students may have since the time of graduation.' " IBC argues that this material was not presented to the trial court. Evidence may not be submitted for the first time on appeal. *See Saler v. Irick*, 800 N.E.2d 960, 970 n. 7 (Ind.Ct.App.2003)).