**7–ELEVEN, INC., MDK Corporation, C & J Realty, LP, and ENSR Corporation, Appellants–Defendants,**

v.

**Larry BOWENS, and Kathy Bowens, et al., Appellees–Plaintiffs.**

No. 20A03–0505–CV–201.

Court of Appeals of Indiana.

Nov. 27, 2006.

---

*Id.*

Michael J. Wall, Rothschild Barry & Myers, Chicago, IL, James V. Woodsmall, Warrick & Boyn, LLP, Elkhart, IN, Attorneys for Appellant, 7–Eleven, Inc.

David L. Hatchett, Hatchett & Hauck, LLP, Indianapolis, IN, Attorney for Appellant, ENSR Corporation.

Michael A. Bianco, Newby Lewis Kaminski & Jones, LLP, LaPorte, IN, Attorney for Appellants, MDK Corporation and C & J Realty, LP.

Thomas A. Barnard, Rodney L. Michael, Jr., Sommer Barnard, P.C., Indianapolis, IN, John D. Ulmer, Yoder Ainlay Ulmer, Goshen, IN, Attorneys for Appellees.

## OPINION

BARNES, Judge.

### Case Summary[1]

7–Eleven, Inc., and ENSR Corporation and MDK Corporation and C & J Realty,

L.P., (collectively "the Defendants")[2] appeal the trial court's certification of a class as defined by Larry Bowens, et al., ("the Plaintiffs"). We affirm.

### Issues

We consolidate, reorder, and restate the issues raised by the Defendants as:

I. whether the trial court properly limited the certification of the class to issues of liability and general causation;

II. whether the trial court properly concluded that the Plaintiffs satisfied the requirements of Indiana Trial Rule 23(A); and

III. whether the trial court properly concluded that the Plaintiffs satisfied the requirements of Indiana Trial Rule 23(B).

### Facts[3]

The Plaintiffs own, occupy, or have occupied homes in a several-block area ("the Jackson Street Neighborhood") near what is currently a 7–Eleven gas station ("the Station") in Goshen. MDK owned the Station until May 12, 1998, when the Station was sold to Southland on August 4, 1998. Southland changed its name to 7–Eleven on April 20, 1999. MDK and 7–Eleven stored gasoline in underground storage tanks ("USTs") at the Station.

On September 26, 1996,[4] a release of gasoline occurred from the USTs at the

---

1. We held oral argument on September 5, 2006. We commend counsel for their advocacy.

2. 7–Eleven and ENSR filed a joint appellants' brief and MDK and C & J filed a joint appellants' brief. We recognize, however, that the various defendants may have differing involvement and potential liability in this action. For purposes of their arguments on appeal where they are similar or overlap, we will address them as "the Defendants."

3. As evidenced by the twenty-four volumes of appendices filed by the parties, this case has produced a tremendous amount of litigation. Our restatement of the procedural history is limited to that which is necessary to resolve the issues raised in this appeal.

4. In their brief, the Plaintiffs describe a 1991 release of kerosene by MDK, and the Defendants do not appear to dispute that this release occurred. The Plaintiffs' third amended complaint, however, is not based on the 1991

Station. MDK, the owner at the time, filed a report with the Indiana Department of Environmental Management ("IDEM"). On March 31, 1998, MDK's environmental consultant, Alt & Witzig Engineering, submitted a letter to IDEM requesting more time to determine the extent of the contamination from the 1996 release. Alt & Witzig installed several groundwater-monitoring wells at the Station.

In 1999, after 7–Eleven purchased the station, ENSR, an environmental consultant acting on behalf of 7–Eleven, installed additional wells and began collecting results from various groundwater-monitoring wells placed throughout the Jackson Street Neighborhood. Samples from the wells showed the presence of benzene, toluene, ethyl benzenes, total xylenes, and methyl tertiary-butyl ether. On January 16, 2001, 7–Eleven and ENSR filed a report with IDEM indicating that another unspecified amount of gasoline had been released from a failed UST. It appears that in 2003, 7–Eleven and ENSR began remediation of the contaminated areas.

The Plaintiffs allege that they were never informed of the releases or the potential health risks associated with exposure to the chemicals found in groundwater or indoor air. On September 25, 2002, the Plaintiffs filed their first complaint for damages and injunctive relief against 7–Eleven and MDK. On January 28, 2003, the Plaintiffs filed a motion for leave to file a second amended complaint for damages and injunctive relief. On May 23, 2003, the Plaintiffs filed a motion for class certification for all persons in the Jackson Street Neighborhood who have owned, rented, or occupied property allegedly impacted by the contamination. On October 28, 2003, the Plaintiffs filed a motion for leave to file a third amended complaint, which the trial court granted.

Against MDK and 7–Eleven, the complaint alleged trespass, UST corrective action, illegal dumping, and strict liability. Against ENSR, the complaint sought relief for an environmental legal action. Against all defendants, the complaint alleged nuisance, negligence, criminal trespass, negligent infliction of emotional distress, and punitive damages.

On March 17, 2004, the trial court held an evidentiary hearing on the Plaintiffs' motion to certify the class. After the hearing, the trial court allowed the parties to supplement the record. On February 8, 2005, the trial court issued an order certifying the class, which provided in part:

6. .... The Plaintiffs in this action, including the members of the proposed class, all own or occupy (or previously owned or occupied) homes or apartment [sic] in the Jackson Street Neighborhood. The Plaintiffs' proposed class consists of the residents of approximately 63 homes. The Plaintiffs have identified at least 234 individuals who have owned or occupied homes within the proposed class area from 1996–2002. Using the Polk City Directory, the Plaintiffs have approximated the number of residents potentially impacted by the contaminated groundwater between 1996 and 2002. From those documents, it appears the proposed class contains at least 234 members. Based on the foregoing, the Court hereby concludes that the Plaintiffs in this case have satisfied the numerosity requirement.

7. .... In the present case, all Plaintiffs allege that, the Defendants contaminated the ground water and soil underlying the Jackson Street Neighborhood; that the Defendants have long delayed cleaning up this contamination and have

release and focuses on contamination from

gasoline, not kerosene.

actively concealed or misrepresented the extent of the contamination; that, the Defendant's actions and inactions have left the Plaintiffs and their families exposed to toxic vapors emitted by gasoline constituents, and that, the value of their real property has been and continues to be adversely impacted by this contamination. Plaintiffs contend that the subject contaminants leaked from three 5,000 gallon underground storage tanks and associated product lines installed at the Station and owned and operated in turn by Defendants MDK and 7–Eleven. These contentions raise issues which are common to each proposed class member.... The Court concludes that the Plaintiffs have satisfied the commonality requirement of Rule 23(A)(2).

8. .... In this case, the Plaintiffs have alleged wrongful conduct by the Defendants similarly affect them and the proposed class members. The claims of the class representatives and the class members arise from the same events and are based on the same legal theories of recovery. Each class member alleges that he or she has been damaged by the Defendants' alleged releases of gasoline and by the Defendants' alleged repeated failure to remediate this contamination. The Plaintiffs, therefore have met the typicality prerequisite of Rule 23(A)(3).

9. .... The Plaintiffs have proposed four class representatives. All four have submitted affidavits which were admitted into evidence on March 17, 2004. Further, the claims of the proposed class representatives include and are consistent with the claims for the proposed class, the class representatives have a sufficient interest in the outcome of this class litigation, and the class representatives do not have antagonistic or conflicting claims with other members of the class. Accordingly, the Court is satisfied that the Proposed Class Representatives understand their obligation to the proposed class. The experience, qualifications, and resources of the proposed class counsel are not challenged by the Defendants. Further, the record shows that counsel have vigorously litigated the matter, and their abilities and adequacy have been demonstrated repeatedly over the course of this litigation and related proceedings. The Court finds the proposed class counsel adequate.

10. .... As described above, those bases described in T.R. 23(B)(1)(a) and T.R. 23(B)(3) have been shown to exist with respect to the instant case.

11. .... For the reasons set forth above, the Court concludes that the requirements of Indiana Trial Rule 23(A) and Indiana Trial Rule 23(B) are satisfied, and that this matter should be certified as a class action. The class representatives proposed by Plaintiffs meet the requirements of the law and are acceptable to the Court. Class certification is limited to issues of liability and general causation, not with issues relating to damages to be decided on an individual basis.

Appellees' Addend. pp. 6–9.

The 7–Eleven and ENSR and MDK and C & J Realty sought to have the class action order certified for interlocutory appeal. The trial court granted the motions, and we accepted jurisdiction of this interlocutory appeal.

### Analysis

 The Defendants challenge the trial court's class certification order. Indiana Trial Rule 23 governs class action proceedings. If the Plaintiffs satisfy the four requirements of Indiana Trial Rule 23(A), they must then satisfy at least one of the requirements of Indiana Trial Rule

23(B). *See Indiana Bus. Coll. v. Hollowell,* 818 N.E.2d 943, 948 (Ind.Ct.App. 2004). Whether an action is maintainable as a class action is committed to the sound discretion of the trial court, and we review a class certification for an abuse of that discretion. *Associated Med. Networks, Ltd. v. Lewis,* 824 N.E.2d 679, 682 (Ind. 2005). "The trial court's certification determination will be affirmed if supported by substantial evidence." *Id.* The satisfaction of the requirements for class certification is a question of fact for the trial court. *Hollowell,* 818 N.E.2d at 949. We neither reweigh the evidence nor judge the credibility of witnesses and affirm if the evidence most favorable to the judgment and all reasonable inferences drawn therefrom support the trial court's decision. *Id.*

### I. Indiana Trial Rule 23(C)(4)

Before we determine whether Indiana Trial Rule 23(A) and (B) are satisfied, we must decide whether the trial court properly limited the certification of the class action to issues of "liability and general causation." Appellees' Addend. p. 9. Although this limitation may not be the most artfully worded, Indiana Trial Rule 23(C)(4)(a) provides that when appropriate, "an action may be brought or maintained as a class action with respect to particular issues[.]" As we have recognized:

"The theory of Rule 23(c)(4)(A) is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member. Accordingly, even if only one common issue can be identified as appropriate for class action treatment, that is enough to justify the application of the provision as long as the other Rule 23 requirements have been met. As a result, cases have applied subdivision (c)(4)(A) to allow a partial class action to go forward and have left questions of reliance, damages, and other issues to be adjudicated on an individual basis."

*Bank One Indianapolis, N.A. v. Norton,* 557 N.E.2d 1038, 1041 (Ind.Ct.App.1990) (quoting 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1790, 271–74 (1986) (footnotes omitted)).

The Defendants contend that the trial court improperly limited the scope of the class on the issue of causation. Although 7–Eleven and ENSR acknowledge other cases in which issues to be resolved in a class action have been similarly limited, the Defendants assert that the Plaintiffs will be able to establish liability simply because the contamination is capable of causing harm. Said another way, 7–Eleven and ENSR contend that the Plaintiffs have no intention of establishing that anyone in the class was actually exposed to the contamination.

This is a mischaracterization of the Plaintiffs' argument. Instead, it appears that the Plaintiffs were arguing for the trial court to certify the issue of general liability in which an expert would testify that exposure to the contamination would "cause certain health symptoms in a general way." Tr. Dec. 3, 2003 Hr. p. 53. The Plaintiffs went on to argue that if there are certain class members who cannot prove that the injuries alleged by them are capable of being caused by exposure to the contamination, then those Plaintiffs would be eliminated from the case. *See id.* The Plaintiffs proposed that after general causation was determined, there would be a series of individual trials for the class members whose injuries fell within those established as a matter of general causation. *See id.* at 57. The Plaintiffs ex-

plained that if the class was not certified, they would have medical examinations performed on all of the named plaintiffs and proceed on an individual basis. *See id.*

■ The Plaintiffs' approach is not uncommon. "Causation in toxic tort cases is typically discussed in terms of generic and specific causation." *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1133 (9th Cir.2002). "General, or 'generic' causation has been defined by courts to mean whether the substance at issue had the capacity to cause the harm alleged, while 'individual causation' refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Id.* To prevail on a claim, the Plaintiffs will have to establish both generic and individual causation. *See id.* at 1134. The Plaintiffs do not dispute this and, in fact, argued for this approach.

Although the Defendants argue that this approach will require hundreds of individual hearings, we fail to see how the trial court abused its discretion in limiting the issues in the manner it did. If the trial court had not certified the class, similar individual hearings for the named plaintiffs would still be required. Further, as the Plaintiffs contend, those class members who cannot establish the issues of general liability would not be entitled to recover, effectively limiting the scope of the class. Moreover, the trial court's certification of class as to the issues of liability and general causation is intended to reduce repetitious litigation and resolve the questions that can be applied to the class as whole. *See Mejdrech, et al., v. Met–Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir.2003) ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to

resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."). We see no harm in this approach.

Finally, as the Plaintiffs point out, Indiana Trial Rule 23(C)(1) allows for an order to be altered or amended before a decision on the merits. They also acknowledge that as discovery continues, it may become necessary that the issues be "carved up" differently than they are currently posited. Appellees' Br. p. 47. The purpose of a class action is to resolve matters as efficiently as possible, and the trial court did not abuse its discretion in limiting the class certification to issues of liability and general causation.

## II. Indiana Trial Rule 23(A)

■ Regarding the requirements of Indiana Trial Rule 23(A), the trial court entered findings of fact sua sponte. Such findings control only as to the issues they cover. *Harrison v. Thomas*, 761 N.E.2d 816, 819 (Ind.2002), *trans. denied.* When reviewing a trial court's findings, first we must determine whether the evidence supports the findings, and second we must determine whether those findings support the trial court's conclusions. *Gregg v. Cooper*, 812 N.E.2d 210, 214 (Ind.Ct.App. 2004), *trans. denied.* We will set aside the findings only if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference. *Id.* at 214–15. A judgment is clearly erroneous if the wrong legal standard is applied to properly found facts. *Id.* at 215.

■ Indiana Trial Rule 23(A) provides:

(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

At issue here are the numerosity and typicality requirements of Indiana Trial Rule 23(A)(1) and (3).[5]

### A. Numerosity[6]

■ The Defendants first argue there is not evidence to support the Plaintiffs' proposed class of 234 individuals and that joinder of the remaining individuals is not impracticable. In discussing the numerosity requirement, we have previously stated:

The determination of whether joinder is impracticable is not simply a test of numbers, but requires an examination of the specific facts and circumstances of each case. Proponents of the class are not required to specify the identities or exact number of persons included in the proposed class, but they may not rely on conclusory allegations that joinder is impracticable or upon speculation as to the size of the class. Instead, they must supply facts or demonstrate circumstances which provide support for a reasonable estimate of the number of class members. A finding of numerosity may be supported by common sense assumptions. Courts interpreting the identical provision of the federal rule have recognized that while numerosity analysis does not rest on a "magic" number, permissive joinder has been deemed impracticable where class members number forty or more. The numerosity inquiry requires the court to consider judicial economy and the ability of the class members to institute individual suits.

*Northern Ind. Pub. Serv. Co. v. Bolka*, 693 N.E.2d 613, 616 (Ind.Ct.App.1998) (citations omitted), *trans. denied.*

■ The Defendants contend that the Plaintiffs' expert testimony of environmental engineer, Dr. Vasiliki Keramida, re-

---

5. The Defendants challenge the satisfaction of the numerosity requirement and do not challenge the adequacy requirement. MDK and C & J Realty challenge the typicality requirement. However, in that section of their brief, MDK and C & J Realty briefly refer to the commonality requirement of 23(A)(2) but do not argue that the claims did not arise out of a common nucleus of operative facts, which is used to support a finding of commonality. *See Hollowell*, 818 N.E.2d at 950. MDK and C & J Realty's fleeting dispute of the nature of the contamination in their reply brief is insufficient to establish their claim as to commonality. This issue is waived. *See Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 514 (Ind.Ct.App.2005) (finding waiver where a party failed to develop a cogent argument or support it with adequate citation to authority and portions of the record), *trans. denied;* Ind. Appellate Rule 46(A)(8)(a).

6. For the first time in their reply briefs, the Defendants argue that the Plaintiffs identified a much smaller class in their third amended complaint and are bound by that definition of the prospective class. This argument, however, is waived. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."). Nevertheless, we believe the Plaintiff's definition in the third amended complaint was a generic description of the Jackson Street Neighborhood and was not intended to limit the boundaries of the properties. Further, although, as the Defendants assert, an attempt to amend a complaint through a motion for class certification may be inappropriate, the third amended complaint was filed *after* the motion to certify the class.

garding the extent of the contamination and the number of homes affected, is insufficient to sustain the trial court's finding of numerosity. Dr. Keramida described the Jackson Street Neighborhood, as defined by the Plaintiffs, as the "most likely area of impact." Tr. March 17, 2003 Hr. p. 71. She also testified, "we know that there is a very, very good likelihood that not only the vapors, as I was saying earlier, have migrated through the sewer.... But the groundwater and the free product itself have a very good likelihood to enter the existing sewers as we believe they are there today." *Id.* at 67. The Defendants primarily argue that Dr. Keramida's conclusions were not based on her own data or samples, rendering her testimony speculative. They contend that the area of contamination is much smaller than that defined by Dr. Keramida. We disagree with the Defendants' characterization of Dr. Keramida's testimony as speculative or nothing more than "bald allegations." 7–Eleven and ENSR's Br. p. 13.

First, during the hearing, the Defendants did not object to Dr. Keramida's testimony as being speculative. Instead, on cross-examination, they questioned her regarding the basis for her conclusions, drawing the alleged inadequacies to the trial court's attention. Dr. Keramida testified at great length as to how she reached her conclusions, and the trial court was free to weigh her testimony accordingly. *See St. Anthony Med. Cent., Inc. v. Smith,* 592 N.E.2d 732, 737 (Ind.Ct.App.1992) ("Evidence that is admitted without a timely objection is entitled to full weight and consideration and may be used to support the judgment."), *trans. denied.*

Further, Dr. Keramida's conclusions were based on samples and data collected by IDEM and ENSR, apparently the same samples and data that the Defendants' experts used to form their conclusions. That Dr. Keramida reached a different conclusion when analyzing the data and considering the Jackson Street Neighborhood's "ant's colony" of sewer lines does not in and of itself render her testimony speculative. Tr. March 17, 2003 Hr. p. 61.

Moreover, the first monitoring wells used to obtain the samples were installed in 1998, approximately eighteen months after the 1996 release. Because no samples were taken immediately after the release, the determination of the extent of the contamination between 1996 and 1998 will necessarily be based on expert analysis of the data collected beginning in 1998. Said another way, the samples taken in 1998 or later are not necessarily reflective of the exposure or contamination in 1996. As Dr. Keramida testified, "we don't have past data, the—the time has come and gone." *Id.* at 270. In an attempt to counter Dr. Keramida's testimony, the Defendants appear to define the number of people who should be included in the class based on the post–1998 data and subsequent remediation efforts. It was within the trial court's discretion to reject this assessment.[7]

Despite the Defendants' objections to the contrary, their attacks on Dr. Keramida's testimony are in large part a request for us to reweigh the evidence. We must decline this request. The trial court was free to define the class based on Dr. Keramida's testimony.

Additionally, the Defendants repeatedly suggest that the Plaintiffs must "prove" the class boundaries before the class can be certified. *See, e.g.,* 7–Eleven

---

7. Because Dr. Keramida's definition of the contaminated area was the basis for the Plaintiffs' real estate expert's opinion regarding the diminution in value of the properties in the Jackson Street Neighborhood, it was within the trial court's discretion to consider it.

and ENSR's Reply Br. p. 15 ("At the class certification stage and not at some later stage, the [Plaintiffs] should have to carry their T.R. 23 burden of establishing which properties have been impacted."); MDK and C & J Realty's Reply Br. p. 19 ("By adopting this procedure, the [Plaintiffs] will circumvent their Trial Rule 23 burden of establishing which properties have been impacted."). Plaintiffs are not required to specify the identities or exact number of persons included in the proposed class, and the fact that the number of class members cannot be determined with precision does not defeat certification. *McCart v. Chief Executive Officer, Indep. Fed. Credit Union*, 652 N.E.2d 80, 83 (Ind.Ct.App.1995), *trans. denied.* Although a party moving for class certification may not rely on conclusory allegations that joinder is impractical or upon speculation as to the size of the class, plaintiffs must only supply facts or demonstrate circumstances that provide support for a reasonable estimate of the number of class members. *Id.* The Plaintiffs only needed to supply facts or demonstrate circumstances supporting their reasonable estimate of the class members, and they were not required to prove the various elements of their claims before the trial court could certify the class. The evidence presented by the Plaintiffs and weighed by the trial court was sufficient to establish the class boundaries.

The Defendants also argue that joinder is not impracticable. Their arguments appear to be based on the notion that Dr. Keramida's definition of the contaminated area, which includes 234 current and former residents of the Jackson Street Neighborhood, is not supported by sub-stantial evidence. It was within the trial court's discretion to accept Dr. Keramida's testimony regarding the extent of the contamination. Thus, we need not address the Defendants' arguments regarding the practicability of joining the smaller group that they urge was affected by the contamination.

Of the 234 individuals included in the class defined by the Plaintiffs, only fifty-six were named in the action. Further, according to the Plaintiffs, thirty-six of the homes in the area are owned and twenty-seven are rented or converted into apartments. Given the number of renters, the fact that people may have sold their homes since the first release in 1996, and total prospective class members, it was within the trial court's discretion to determine that joinder of the 234 prospective class members was impracticable. The Defendants have not shown that the trial court abused its discretion in concluding that the numerosity requirement was satisfied.[8]

### B. Typicality

MDK and C & J Realty also argue that the Plaintiffs failed to establish the typicality requirement of Indiana Trial Rule 23(A)(3). The typicality requirement does not mandate the Plaintiffs to show that all claims are identical. *Hollowell*, 818 N.E.2d at 950. Instead, this requirement is satisfied if the representative plaintiffs' claims are neither in conflict with nor antagonistic to the class as a whole. *Id.* MDK and C & J Realty focus on the potential differences among the prospective class members including

---

8. In their post-hearing brief, the Plaintiffs suggested that the trial court could manage the case by certifying subclasses. On appeal, the Defendants contend that the Plaintiffs' attempt to define subclasses must fail. As 7–Elven and ENSR recognize, the trial court did not grant the Plaintiff's request for subclasses. Because Indiana Trial Rule 23(C)(4)(b) permits but does not require subclassification, we fail to see how the trial court improperly declined to impose subclasses.

whether they have basements or crawl spaces, whether they have dirt floors or concrete floors, whether they are smokers, whether they have fuel oil tanks in their homes, and whether their houses may have been sold before either release was publicized. Although these differences may exist among the prospective class members, their claims need not be identical. *See Hollowell*, 818 N.E.2d at 950. Further, these differences are not enough to establish that the representatives' claims conflict with or are antagonistic to the claims of the class as a whole.

Also, the trial court limited the action maintained by the class to issues of "liability and general causation." Appellees' Addend. p. 9. Thus, many of the differences that MDK and C & J Realty point to will be addressed as issues of proximate causation and damages relating to the individual class members. MDK and C & J Realty have not shown that the trial court erroneously concluded that the typicality requirement had been met.

### III. Indiana Trial Rule 23(B)(3) [9]

▮ Regarding Indiana Trial Rule 23(B), the trial court did not make special findings. Under such circumstances, we treat the judgment as a general judgment and affirm if it can be sustained upon any legal theory the evidence supports. *Harrison*, 761 N.E.2d at 819.

Indiana Trial Rule 23(B)(3) requires the trial court to "find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [10] The matters pertinent to this finding include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

Ind. Trial Rule 23(B)(3).

▮ The Plaintiffs contend that they have met the requirements of Indiana Trial Rule 23(B)(3), which mandates not only the existence of questions of law or fact common to the members of the class but also requires the questions to predominate over any questions affecting only individual members. *Associated Medical*, 824 N.E.2d at 684. There is no precise test for determining whether common questions of law or fact predominate; instead, Indiana Trial Rule 23(B)(3) requires a pragmatic assessment of the entire action and all the issues involved. *Id.* at 686. In making this decision, we consider whether the substantive elements of class members' claims require the same proof for each class member; whether the proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests; whether the resolution of an issue common to the

---

9. The Plaintiffs specifically contend that they do not seek affirmance of the trial court's order based on Indiana Trial Rule 23(B)(1) even though the trial court found that it had been satisfied.

10. As the Plaintiffs point out, the Defendants do not appear to make any specific arguments regarding the requirement that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* T.R. 23(B)(3).

class would significantly advance the litigation; whether one or more common issues constitute significant parts of each class member's individual cases; whether the common questions are central to all of the members' claims; and whether the same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses. *Id.*

▪ Initially, we reject the Defendants' assertions that the trial court improperly used the commonality analysis under Indiana Trial Rule 23(A)(2) to satisfy the predominance requirement of Indiana Trial Rule 23(B)(3). Although "[p]redominance requires more than commonality," as previously stated, the trial court did not make special findings regarding this requirement.[11] *Id.* at 685. We are not convinced that the provision of the trial court's order, "as described above those bases described in ... T.R. 23(B)(3) have been shown to exist," was intended to equate the commonality and predominance requirements.

▪ The Defendants contend that the case is "dominated by individual issues, including the extent and nature of the alleged injuries, the degree and length of the alleged exposure, if it occurred, the prevalence of alleged contamination, the individual and separate defense raised by 7–Eleven, MDK and ENSR, and proximate cause issues." 7–Eleven and ENSR's Br. p. 23. MDK and C & J Realty claim, "The practical reality of [the Plaintiffs'] claims, however, reveals that there would be inextricable entanglement with the individualized issues of proximate cause that will no doubt subsume any common ques-

tions that may be present." MDK and C & J Realty's Br. p. 22. These contentions, however, are based in large part on the individual issues not certified by the trial court. Thus, in determining whether the predominance requirement was satisfied, we are mindful that the trial court only certified the class with respect to issues of "liability and general causation." Appellees' Addend. p. 9.

The Plaintiffs argue that the Defendants' release and failure to remediate the gasoline spills in the Jackson Street Neighborhood establish many of the common issues in the case. The Plaintiffs then identify thirteen issues to be addressed:

(1) Were the Defendants negligent in allowing gasoline to be released from their underground storage tanks at the Station?

(2) Were the Defendants' releases of gasoline foreseeable?

(3) Was the off-site migration of Defendants' gasoline releases foreseeable?

(4) Did the Defendants know of the inherent damages resulting from exposure to benzene and other gasoline vapors?

(5) Were the Defendants negligent in failing to warn their neighbors of the migration of Defendants' gasoline into the Jackson Street Neighborhood?

(6) Did the Defendants act with reckless disregard, or willfully and wantonly, in deciding not to inform its neighbors of the gasoline contamination?

---

11. 7–Eleven and ENSR argue, "The trial court never made a finding whether these common facts predominated over questions affecting only individual members. This alone is reversible error." 7–Eleven and ENSR's Br. p. 21. Without further develop-

ing this argument, we fail to see how the trial court's failure to make this specific finding is reversible error. This argument is waived. *See Carter,* 837 N.E.2d at 514; *see also* Ind. App. R. 46(A)(8)(a).

(7) Did the Defendants act with reckless disregard, or willfully and wantonly, in not immediately remediating the contamination?

(8) How much gasoline was released by each Defendant?

(9) What is the soil hydrology of the Jackson Street Neighborhood?

(10) How far did each of the Defendants' gasoline migrate?

(11) How fast did each of the Defendants' gasoline migrate?

(12) Was each of the Defendants' gasoline cable [sic] of causing personal injuries to the class members?

(13) Was each of the Defendants' gasoline capable of causing injury to the property values of the properties within the class?

Appellees' Br. pp. 32–33.

The Defendants claim that there is no common course of conduct because the releases "occurred under different circumstances, in varying quantities, and at different times...." MDK and C & J Realty's Reply Br. p. 18. They also argue that the Plaintiffs improperly group the four Defendants together despite their varying involvement in the case and that they have different defenses to the Plaintiffs' claims. Although these concerns may be legitimate, we cannot conclude that they outweigh the economies of time, effort, and expense that will be achieved by allowing the class action to proceed on the issues defined by the trial court. *See Associated Medical*, 824 N.E.2d at 685. As to those issues, we believe the substantive elements of the claims require the same proof for each class member, that the class is bound together by a mutual interest in resolving the common questions more than it is divided by individual interests, that the resolution of the common issues will significantly advance the litigation, and that

there are common questions central to all of the members' claims. *See id.* at 686.

As our supreme court has explained:

the predominance test really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis.

*Id.* at 685. We believe that the issues certified by the trial court balance the value of allowing individuals to protect their own interests and the economy achieved by allowing the common issues to be resolved on a class action basis. The Defendants have not established that the trial court abused its discretion in finding that Indiana Trial Rule 23(B)(3) is satisfied.

## Conclusion

The trial court did not abuse its discretion by limiting the issues to be pursued by the class or by finding that the requirements of Indiana Trial Rule 23(A) and (B)(3) had been satisfied. We affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.